IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| HUMPHREYS & PARTNERS ARCHITECTS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:13-cv-433 TSE/TCB |
| | ) | |
| v. | ) | |
| | ) | |
| LESSARD DESIGN, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ......................................................................... 1

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.     HUMPHREYS OWNS A VALID ARCHITECTURAL WORKS COPYRIGHT ........... 5

II.    DEFENDANTS CANNOT SUPPORT THEIR COUNTERCLAIMS AND
       AFFIRMATIVE DEFENSES ............................................................................... 6

       A.     Defendants' Validity Challenges To The Grant Park Design Lack Support ......... 7

       B.     Defendants Cannot Support Their Implied License Allegations ......................... 9

       C.     Defendants Cannot Show Laches, Estoppel, Waiver, Or Unclean Hands ........... 10

       D.     Defendants Cannot Show Copyright Misuse ...................................................... 13

       E.     Defendants Cannot Show That Their Conduct Was Permitted "By The
              First Sale Doctrine Or The Doctrine Of Exhaustion" ........................................ 14

       F.     Defendants' Copyright Registration Defenses Cannot Be Supported ................. 16

              1.     Defendants Have Not Satisfied The Requirements Of § 411(b) .............. 16

              2.     Grant Park Is Not A Derivative Of Humphreys' Earlier Work .............. 17

              3.     Humphreys' Clients Were Not Joint Authors ........................................ 18

              4.     The Grant Park Design Was Unpublished When It Was Registered ....... 21

       G.     Lessard's Defenses And Counterclaim Based On A Florida Architect's
              Design Have No Merit ..................................................................................... 23

              1.     The Court Should Strike All Evidence Related To Mr. Swedroe
                     And His Design Because Lessard Is Paying Him For His
                     Testimony ......................................................................................... 23

              2.     No Evidence Of Copying .................................................................. 23

              3.     Lessard's Search For Prior Art Has No Place In A Copyright Case ....... 25

              4.     Mr. Swedroe Did Not Transfer An Architectural Works Copyright ....... 27

              5.     Lessard's Registered Drawing Was Created Only For This Lawsuit ...... 29

CONCLUSION ................................................................................................................. 29

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*ABC, Inc. v. Primetime 24, Joint Venture,*
  17 F. Supp. 2d 478 (M.D.N.C. 1998) ...................................................................12

*Aga Correa & Son v. Nautical Gold Creations,*
  No. 05 Civ 624, 2005 U.S. Dist. LEXIS 5955 (S.D.N.Y. Apr. 6, 2005) ...............26

*Aitken, Hazan, Hoffman, Miller P.C. v. Empire Constr. Co.,*
  542 F. Supp. 252 (D. Neb. 1982) ..........................................................................20

*Alexandria Resident Council v. Alexandria Redev. & Housing Auth.,*
  11 F. App'x 283 (4th Cir. 2001) ..............................................................................8

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ..............................................................................................4, 6

*Billy-Bob Teeth, Inc. v. Novelty, Inc.,*
  329 F.3d 586 (7th Cir. 2003) ................................................................................21

*Broadcast Music, Inc. v. Moor-Law, Inc.,*
  484 F. Supp. 357 (D. Del. 1980) ..........................................................................4, 6

*Brown v. Flowers,*
  196 F. App'x 178 (4th Cir. 2006) ..........................................................................19

*Brown v. McCormick,*
  23 F. Supp. 2d 594 (D. Md. 1998) ........................................................................19

*Building Graphics, Inc. v. Lennar Corp.,*
  708 F.3d 573 (4th Cir. 2013) ................................................................................24

*Causey v. Balog,*
  162 F.3d 795 (4th Cir. 1998) ..................................................................................4

*Celetox v. Catrett,*
  477 U.S. 317 (1986) ................................................................................................6

*Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC,*
  495 F. App'x 314 (4th Cir. 2012) ............................................................................5

*Childress v. Taylor,*
  945 F.2d 500 (2d Cir. 1991) ......................................................................18, 19, 20

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
  36 F. 3d 1147 (1st Cir. 1984) ................................................................16

*DeliverMed Holdings LLC v. Schaltenbrand*,
  No. 12-3773(L), 2013 U.S. App. LEXIS 20456 (7th Cir. Oct. 7, 2013) ..............................8, 9

*FASA Corp. v. Playmates Toys, Inc.*,
  912 F. Supp. 1124 (N.D. Ill. 1996) ..............................................................26

*Feist Publ'ns, Inc. v. Rural Tel. Service Co.*,
  499 U.S. 340 (1991) ..............................................................5, 25

*Fisher v. Dillingham*,
  298 F. 145 (S.D.N.Y. 1924) ..............................................................26

*Fred Riley Home Building Corp. v. Cosgrove*,
  864 F. Supp. 1034 (D. Kan. 1994) ..............................................................21

*Games Workshop, Ltd. v. Chapterhouse Studios, LLC*,
  No. 10 C 8103, 2012 U.S. Dist. LEXIS 168360 (N.D. Ill. Nov. 27, 2012) ..............................26

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
  118 F.3d 199 (4th Cir. 1997) ..............................................................14, 15

*HRH Architects, Inc. v. Lansing*,
  No. 1:08-cv-1479, 2009 U.S. Dist. LEXIS 46255 (N.D. Ga. Apr. 22, 2009) ..............................20, 21

*Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*,
  70 F.3d 96 (11th Cir. 1995) ..............................................................21

*Innovative Legal Mktg., LLC v. Market Masters-Legal*,
  852 F. Supp. 2d 688 (E.D. Va. 2012) ..............................................................4, 6

*John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*,
  322 F.3d 26 (1st Cir. 2003) ..............................................................22

*Johnson v. Jones*,
  149 F.3d 494 (6th Cir. 1998) ..............................................................10

*L. Foster Consulting, LLC v. XL Group, Inc.*,
  No. 3:11-cv-800, 2012 U.S. Dist. LEXIS 93979 (E.D. Va. June 1, 2012), *approved
  and adopted in pertinent part*, 2012 U.S. Dist. LEXIS 93976 (E.D. Va. July 6, 2012) ..........19

*Lasercomb America, Inc. v. Reynolds*,
  911 F.2d 970 (4th Cir. 1990) ..............................................................13

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ..............................................................17

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
    243 F.3d 789 (4th Cir. 2001) ...............................................................................10, 11, 24

*Masquerade Novelty, Inc. v. Unique Indus.*,
    912 F.2d 663 (3d Cir. 1990)...............................................................................................16

*Mathieson Assocs., Inc. v. Shoup*,
    28 F. App'x 274 (4th Cir. 2002) ........................................................................................14

*Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*,
    722 F.3d 591 (4th Cir. 2013) .............................................................................................21

*One Treasure Ltd., Inc. v. Richardson*,
    202 F. App'x (5th Cir. 2006) ..........................................................................................8, 16

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*,
    684 F. 2d 821 (11th Cir. 1982) ..........................................................................................16

*Palmetto Builders & Designers, Inc. v. Unireal, Inc.*,
    342 F. Supp. 2d 468 (D.S.C. 2004)....................................................................................15

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008)............................................................................................................15

*Queenie, Ltd. v. Hot Stuff, Inc.*,
    102 F. Supp. 2d 512 (S.D.N.Y. 2000)................................................................................27

*Reed Elsevier , Inc. v. Munchnick*,
    559 U.S. 154 (2010)............................................................................................................16

*Rexnord, Inc. v. Modern Handling Sys., Inc.*,
    379 F. Supp. 1190 (D. Del. 1974)......................................................................................18

*Ronald Mayotte & Associates v. MGC Building*,
    885 F. Supp. 148 (E.D. Mich. 1994)..................................................................................18

*Secure Services Technology, Inc. v. Time and Space Processing, Inc.*,
    722 F. Supp. 1354 (E.D. Va. 1989) ...................................................................................15

*Service & Training, Inc. v. Data General Corp.*,
    963 F.2d 680 (4th Cir. 1994) .............................................................................................11

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    81 F.2d 49 (2d Cir. 1936) ..................................................................................................26

*Stein v. Mazer*,
    204 F.2d 472 (4th Cir. 1953), *aff'd*, 347 U.S. 201 (1954)....................................................26

*Synercom Tech., Inc. v. Univ. Computing Co.*,
  462 F. Supp. 1003 (N.D. Tex. 1978) ...................................................................27

*Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*,
  377 F. App'x 303 (4th Cir. 2010) ..........................................................................9

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
  618 F.3d 417 (4th Cir. 2010) .................................................................................4

*Warren Freedenfeld Assocs., Inc. v. McTigue*,
  No. 05-11573, 2007 U.S. Dist. LEXIS 17137 (D.C. Mass. Mar. 9, 2007), *aff'd on
  other grounds*, 531 F.3d 38 (1st Cir. 2008) .........................................................20

*Watkins v. Chesapeake Custom Homes, LLC*,
  330 F. Supp. 2d 563 (D. Md. 2004) ......................................................................21

*Zitz v. Pereira*,
  119 F. Supp. 2d 133 (E.D.N.Y. 1999) ..................................................................21

**STATUTES**

17 U.S.C. § 101 ............................................................................................. *passim*

17 U.S.C. § 102 .............................................................................................5, 17

17 U.S.C. § 106 ..................................................................................................18

17 U.S.C. § 109 ..............................................................................................14, 15

17 U.S.C. § 204 ..................................................................................................27

17 U.S.C. § 410 ....................................................................................................6

17 U.S.C. § 411 ........................................................................................8, 9, 16, 27

17 U.S.C. § 501 ..................................................................................................27

17 U.S.C. § 502 ..................................................................................................12

17 U.S.C. § 507 ..................................................................................................11

**OTHER AUTHORITIES**

17 C.F.R. § 202.19 ..............................................................................................29

17 C.F.R. § 202.20 ..............................................................................................28

37 C.F.R. § 202.11 ..............................................................................................28

H.R. Rep. No. 101-735, *reprinted in* 1990 U.S.C.C.A.N. 6935 ....................................................17

H.R. Rep. No. 94-1476 ..................................................................................................................6

## INTRODUCTION

In this motion, Plaintiff Humphreys & Partners Architects, L.P. ("Humphreys") seeks to "clear the underbrush" for trial by disposing of issues on which there is no genuine issue of material fact. First, because there is no dispute that Humphreys owns a valid copyright in the architectural work in suit, Humphreys is entitled to summary judgment on that aspect of its claim. Second, because there is no evidence to support all the essential elements of various affirmative defenses and counterclaims, those should also be dismissed in advance of trial.

## BACKGROUND

Humphreys is an architecture firm in Dallas, Texas, founded by Mark Humphreys.[1] In 2002, Humphreys designed a high-rise building in Minneapolis known as the Grant Park Condominiums and in 2003 applied for a copyright on that design. In 2010, Humphreys proposed the Grant Park design for a high-rise building in McLean, Virginia, now known as Two Park Crest. After learning of the Grant Park design from Humphreys, the developer hired another architect to copy Humphreys' Grant Park design. The defendants' unauthorized use of the Grant Park design is the issue in this copyright infringement case.

## STATEMENT OF UNDISPUTED FACTS

Humphreys supports this motion with the following undisputed evidence:

1.      Humphreys is the author and owner of the copyright in an architectural work titled the "Grant Park Condominiums" (hereinafter "Grant Park"). (Decl. of Mark Humphreys ("Humphreys Decl.") ¶ ¶ 6-16, 20; Decl. of Walter Hughes ("Hughes Decl.") ¶ 3; Exs. A; B.)

2.      The  United States Copyright Office issued Certificate of Registration Number VAu 579-008 to Humphreys for Grant Park. (Ex. A.)

3.      Humphreys completed the Grant Park design in 2002. (Humphreys Decl. ¶ 15-16; Hughes Decl. ¶¶ 19-20; Ex. A.)

4.      The Certificate of Registration VAu 579-008 for Grant Park has an effective date of

---

[1] To distinguish the firm from the person, "Mr. Humphreys" refers to the latter.

February 19, 2003, which is within five years after Humphreys' completion of the work. (*Id.*)

5.      Grant Park is an original work of authorship by Humphreys. (*Id.*; Humphreys Decl. ¶¶ 6-16, 20; Hughes Decl. ¶¶ 3-17.)

6.      Humphreys' clients on the Grant Park project, Apex Asset Management and Opus Northwest Construction Corporation, were not joint authors of Grant Park. (Humphreys Decl. ¶ 14; Hughes Decl. ¶ 18; Ex. B at 1; 2 at ¶ 1.1.2.8, Addendum C; 16 at ¶ 2.4.2.1.)

7.      Humphreys did not derive the Grant Park design from any preexisting works. Grant Park was not based on and did not incorporate any preexisting works. (Hughes Decl. ¶¶ 3-17; Humphreys Decl. ¶ 6-16, 20, 24.)

8.      The material deposited by Humphreys with its application for a Certificate of Registration for the Grant Park design constitutes copyrightable subject matter and reflects a sufficient quantum of creativity to be entitled to copyright protection. (Ex. A.) ¶

9.      Humphreys complied with all applicable statutory formalities in obtaining Certificate of Registration VAu 579-008 for Grant Park. (*Id.*) ¶

10.     Humphreys is the owner of a valid copyright in Grant Park. (*Id.*)

11.     Humphreys did not create the Grant Park design, or any other design, at the request of any defendant; no defendant requested a design from Humphreys; Humphreys did not deliver a design to any defendant in this case at their request; and Humphreys did not intend for any defendant to copy its Grant Park design or any other work. (Humphreys Decl. ¶ 21-23, 25.)

12.     Humphreys *filed* suit on April 9, 2013, which was within three years of the accrual of its claim. (Dkt. No. 1; Ex. C at 317-318, 339, Ex. 14, Ex. 37.)

13.     Humphreys did not intentionally and voluntarily relinquish its copyright in Grant Park. (Humphreys Decl. ¶ 20.)

14.     Humphreys is not attempting to claim a monopoly on any individual features or elements of Grant Park. Humphreys' copyright is in Grant Park as defined in 17 U.S.C. §101. (Exs. A; E at 22-23, 67-69, 286-288, 290-291, 295-296, 301-303; F at 379-380.)

15.     No defendant has purchased or sold a lawfully made copy of Grant Park. (Ex. D.)

16.     In its written proposal for services for the Two Park Crest project, Humphreys expressly excluded the conveyance of an implied license for the Grant Park design. (*Id.*)

17.     In a meeting with The Penrose Group, Mr. Humphreys explained that the Grant Park design was a proprietary Humphreys design and that it was protected by copyright. (Ex G at 165-167, 236-238.)

18.     No other defendant had any contact with Humphreys regarding the Two Park Crest project prior to this lawsuit. (Ex. C at 332-333.)

2

19.     Grant Park was not published as of February 19, 2003.  The Grant Park design had been transmitted to a limited number of persons and entities for the limited purpose of developing and designing the Grant Park tower.  (Ex. A; Hughes Decl. ¶ 14-20; Humphreys Decl. ¶¶ 9-16.)

20.     Prior to the design of Grant Park, Humphreys did not have a reasonable opportunity to view or copy any depiction of a building designed by Robert M. Swedroe Architects-Planners, P.A. ("Swedroe Architects").  (Hughes Decl. ¶ 21; Humphreys Decl. ¶ 24.)

21.     Humphreys did not have access to Mr. Swedroe's Harbor Towers design before designing Grant Park.  (Ex. H at 58-59, 61-63, 66, 67-70; Humphreys Decl. ¶ 24.)

22.     On October 24, 2013, Defendants Christian J. Lessard, Lessard Design, Inc., and Lessard Group, Inc. (the "Lessard defendants") asserted claims and defenses alleging Humphreys copied a design of Mr. Swedroe's called "Harbor Towers."  (Dkt. No. 132 at p. 8, ¶¶ 4-5, p. 9, ¶ 7, & p. 11, ¶ 11; Dkt. No. 133 at p. 8, ¶¶ 4-5, pp. 8-9, ¶ 7, p. 11, ¶ 11, & pp. 13-14; Dkt. No. 134 at p. 8, ¶¶ 4-5, p. 9, ¶ 7, & p. 11, ¶ 11.)

23.     Shortly before asserting claims and defenses for which the Lessard defendants rely on Mr. Swedroe as a fact witness, Lessard Design and its attorneys offered inducements to Mr. Swedroe in the form of a "consulting agreement" for which he would be paid a $3,500 nonrefundable retainer and $350 per hour, and an agreement to assign a copyright for which he was paid $20,000 and a 10% contingent fee in any recovery based on that copyright. (Exs. I; J; K.)  These amounts were not based on any objective value of the copyright.  (Ex. H at 102-105, 141-146.)

24.     On October 24, 2013, a Finnegan attorney filed a copyright application on Mr. Swedroe's design.  (Ex. L.)

25.     The consulting agreement required Mr. Swedroe to refuse to speak to anyone about the case, including counsel for Humphreys, and obligated him to keep his purported knowledge secret from everyone except the Lessard defendants and their attorneys.  (Ex. I.)

26.     The only copyright assigned by Swedroe Architects to Lessard Design was the copyright in a floor plan drawing of Harbor Tower that was first created after September 24, 2013, for the purpose of Humphreys' copyright infringement lawsuit.  (Exs. H at 97, 129-130, 132; J; K.)

27.     The design for the Harbor Tower building was completed by Swedroe Architects prior to December 1, 1990.  (Ex. E at 247; H at 89, 92-93.)

28.     The Harbor Tower building was constructed after January 1, 1993.  (Ex. H at 92, 168.)

29.     Swedroe Architects did not provide a complete copy of an architectural drawing or blueprint in visually perceptible form showing the overall form of the Harbor Tower building and any interior arrangement of spaces and design elements of that building to Lessard Design or its attorneys prior to October 24, 2013, and Lessard Design did not deposit such a complete copy with the United States Copyright Office in support of any application to register the Harbor Tower design as an architectural work.  (Exs. H at 120, 121, 125, 130-31, Ex. 13; L.)

30.    The only architectural drawing or blueprint in visually perceptible form showing any part of the Harbor Tower building design provided by Swedroe Architects to Lessard Design was a floor plan drawing that was first created after September 24, 2013, for purposes of this copyright infringement lawsuit, and this was the only document that Lessard Design deposited with the Copyright Office in support of any application to register the Harbor Tower floor plan as a technical drawing.  (Exs. H at 120, 121, 125, 130-31, Ex. 13; L.)

31.    Mr. Swedroe stated that the drawing submitted to the Copyright Office does not show anyone what the building looked like.  (Ex. H at 124-125, 129.)

## LEGAL STANDARD

**Summary Judgment.**  Summary judgment is appropriate when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  To avoid summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings, instead relying upon affidavits, depositions, or other evidence to show a genuine issue for trial.  *See id.* at 324. Conclusory statements, without specific evidentiary support, are insufficient.  *See Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998).  Rather, "there must be evidence on which the jury could reasonably find" for the nonmovant.  *Liberty Lobby*, 477 U.S. at 252.

**Copyright Infringement.**  To prove copyright infringement, the plaintiff must establish: (1) ownership of a valid copyright, and (2) unauthorized copying.  *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010).  The plaintiff's ownership of a valid copyright is particularly amenable to summary judgment.  *See Innovative Legal Mktg., LLC v. Market Masters-Legal*, 852 F. Supp. 2d 688, 700 (E.D. Va. 2012); *Broadcast Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357 (D. Del. 1980).

The copyright at issue here concerns an architectural work.  An architectural work is protected under the Copyright Act pursuant to the Architectural Works Copyright Protection Act of 1990 ("AWCPA"), as the design of a building in any tangible medium of expression,

including plans, drawings, and the building itself.  *See* 17 U.S.C. § 101.

**ARGUMENT**

**I.      HUMPHREYS OWNS A VALID ARCHITECTURAL WORKS COPYRIGHT**

Valid copyrights cover "original works of authorship." 17 U.S.C. § 102(a).  To be

"original," the work must have been independently created by the author, rather than copied from

another work, and must "possess[] at least some minimal degree of creativity."  *Feist Publ'ns,*

*Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 345 (1991).  The Copyright Act defines an

"architectural work" as "the design of a building as embodied in any tangible medium of

expression, including a building, architectural plans, or drawings.  The work includes the overall

form as well as the arrangement and composition of spaces and elements in the design, but does

not include individual standard features."  17 U.S.C. § 101.  Courts in architectural works

copyright cases regularly explain that the overall work is original even though made up of

individual elements that are not protectable.  *See Charles W. Ross Builder, Inc. v. Olsen Fine*

*Home Bldg., LLC*, 495 F. App'x 314, 320 (4th Cir. 2012) (originality "frequently comes from the

'arrangement and composition' of spaces and other design elements, which are not otherwise

protectable").

The declarations of Mark Humphreys and Walter Hughes establish that the Grant Park

Condominiums is an original work independently created by Humphreys.  ( Humphreys Decl.

¶¶ 6-16, 20; Hughes Decl. ¶¶ 3-17; SOF ¶ 5.)  These declarations satisfy Humphreys' burden of

proof on the validity of its copyright.

Additionally, Humphreys has been issued Certificate of Registration Number VAu 579-

008 by the Copyright Office, effective February 19, 2003.  (SOF ¶ 4.)  Thus, while the

declarations are sufficient to satisfy Humphreys' burden of proof, this certificate is *prima facie*

evidence that Humphreys owns a valid copyright.  In any judicial proceeding, "the certificate of

5

a registration made before or within five years after first publication of the work shall constitute

prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17

U.S.C. § 410(c).  Courts regularly grant summary judgment based on this statutory presumption.

*See, e.g.*, *Innovative Legal Mktg.*, 852 F. Supp. 2d at 698-700; *Broadcast Music*, 484 F. Supp. at

362-63 ("registration certificates generally constitute prima facie evidence of originality,

authorship, and compliance with statutory formalities").

To rebut the statutory presumption, defendants bear the burden of coming forward with

evidence raising a question of fact as to Humphreys' ownership of valid copyrights.  *See Celotex*

*v. Catrett*, 477 U.S. 317, 323 (1986).  The legislative history shows that the purpose of the

presumption is to place the burden of challenging the validity of a copyright on the defendant:

> The plaintiff should not ordinarily be forced in the first instance to prove all of the
> multitude of facts that underline the validity of the copyright unless the defendant,
> by effectively challenging them, shifts the burden of doing so to the plaintiff.

H.R. Rep. No. 94-1476 at 157 (1976).  Defendants have no evidence to do so.  Accordingly,

Humphreys is entitled to summary judgment with respect to its ownership of a valid copyright.

## II.   DEFENDANTS CANNOT SUPPORT THEIR COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

The remainder of Humphreys' summary judgment motion concerns defendants'

boilerplate affirmative defenses and related counterclaims.  Several do not apply as a matter of

law, and the others lack evidence to satisfy any or all essential elements.  Because defendants

bear the burden of proof on their counterclaims and affirmative defenses, they are required to

show competent evidence on each element to survive summary judgment.  *See Celotex*, 477 U.S.

at 322-23.  For the following pleadings, it is clear that defendants cannot do so.[2]

---

[2] The attached Appendix ("App.") identifies each defendant's affirmative defenses and counterclaim allegations as they are addressed in the following sections of this memorandum.

## A.    Defendants' Validity Challenges To The Grant Park Design Lack Support

All defendants have asserted various affirmative defenses challenging the validity of Humphreys' copyright in the Grant Park design—the same issue addressed in Part I above. (App. at 2-5.)  Northwestern's Third, Fourth, and Fifth Affirmative Defenses are representative, alleging that Humphreys' copyright "is invalid and/or unenforceable for failure to comply with one or more provisions" of the Copyright Act and that the Grant Park design "is not subject to copyright protection" based on defendants' misinterpretation of the architectural works copyright as extending to ideas, standard features, and functional elements.  (Dkt. No. 129 at 10-11.)

In addition, the Lessard defendants have made more specific allegations that Humphreys' copyright in Grant Park is invalid based on alleged "prior art" in the form of a building design of a Florida architect, Robert Swedroe.  (App. at 14-17.)  Lessard Design also asserts the same allegations in its counterclaim for a declaratory judgment of invalidity and unenforceability. (App. at 14-15; Dkt. No. 133 at 13-14.)  For the reasons set forth in Part I, summary judgment on these challenges to the validity of Humphreys' copyright and the Copyright Office's issuance of the registration certificate should be granted.  Because Humphreys has established by declaration and record evidence that it owns a valid copyright in an original work of authorship, and because the Copyright Office has issued a certificate of copyright registration for the Grant Park design, defendants have the burden of showing that the registration certificate and Humphreys' copyright are not valid.  Given the absence of credible proof sufficient to raise a genuine issue of material fact, Humphreys is entitled to summary judgment on all of these affirmative defenses and counterclaim.

Humphreys is entitled to summary judgment on these allegations for an independent reason:  defendants have not asked the Court to seek the input of the Register of Copyrights about whether their arguments would have led the Copyright Office to refuse registration on the

Grant Park design.  The Copyright Act was amended in 2008 to codify judicial decisions that

required any inaccuracies in a copyright application to be material before invalidating a

copyright registration, *see* 17 U.S.C. § 411(b)(1),[3] and establishing a procedure for obtaining the

Register's position on whether a particular inaccuracy would have caused the Register to refuse

registration:

> (2) In any case in which inaccurate information described under paragraph (1) is
> alleged, the court shall request the Register of Copyrights to advise the court
> whether the inaccurate information, if known, would have caused the Register of
> Copyrights to refuse registration.

17 U.S.C. § 411(b)(2).  This provision was recently applied by Seventh Circuit in *DeliverMed*

*Holdings LLC v. Schaltenbrand*, No. 12-3773(L), 2013 U.S. App. LEXIS 20456 (7th Cir. Oct. 7,

2013).  There, the district court granted a declaratory judgment that a copyright registration was

invalid based on the registrant's fraud on the Copyright Office.  The Seventh Circuit reversed

because the court did not first consult the Copyright Office as to the significance of the

inaccurate information.  Such consultation was mandatory under § 411(b)(2), and the district

court erred in granting the declaration of invalidity without following the statute.  *Id.* at *3-4,

*14-22.

Defendants' failure to ask the Court to consult the Register of Copyrights means that the

Court cannot hold either the registration or Humphreys' copyright invalid.[4]  Moreover,

defendants have failed to come forward with evidence of either specific inaccurate information

---

[3] "In this regard, § 411(b) appears to be a codification of the approach employed by the
Fifth Circuit and other courts."  *One Treasure Ltd., Inc. v. Richardson*, 202 F. App'x, 658, 660-
61 (5th Cir. 2006) (citing 2 *Nimmer on Copyright*, § 7.20 (the statutory amendment "is well in
line with the construction of the [Copyright] Act prior to this amendment")).

[4] Because Congress intended courts to follow § 411(b)(2) before considering a defense of
fraud on the Copyright Office, the same principles requiring exhaustion of administrative
remedies before filing suit apply equally to assertion of a fraud defense.  *See, e.g., Alexandria
Resident Council v. Alexandria Redev. & Housing Auth.*, 11 F. App'x 283 (4th Cir. 2001).

that Humphreys allegedly provided, or proof that Humphreys did so knowingly.  *See* 17 U.S.C.

§ 411(b)(1).  In the absence of such proof, the Court is not required to take the time-consuming

step of seeking an opinion from the Register of Copyrights.  *See DeliverMed Holdings*, 2013

U.S. App. LEXIS 20456, at *22-24.

     For any of these reasons, summary judgment should be granted to Humphreys on

defendants' validity challenges to the Grant Park design.

### B.    Defendants Cannot Support Their Implied License Allegations

     All defendants allege an "implied license" from Humphreys to make use of the Grant

Park design.  (App. at 5-6.)  A nonexclusive license is essentially a promise not to sue for

infringement.  *See Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*,

377 F. App'x 303, 306 (4th Cir. 2010).  The Fourth Circuit holds that the following elements are

required to prove the existence of an implied license:

    (1)     A person (the licensee) requests the creation of a work,
    (2)     The creator (the licensor) makes that particular work and delivers it to the
            licensee who requested it, and
    (3)     The licensor intends that the licensee copy and distribute his work.

*Id.* at 307 (quoting *Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 514 (4th Cir. 2002)).

     No evidence exists to support any of these factors.  No defendant requested that

Humphreys create the Grant Park design.  (SOF ¶ 11.)  Humphreys did not make the Grant Park

design and deliver it to any of the defendants.  (*Id.*)  And Humphreys never intended that any of

the defendants could copy and distribute its Grant Park design.  (*Id.*)

     Indeed, the evidence affirmatively shows that Humphreys never intended to grant an

implied license.  In *Thomas M. Gilbert Architects*, the Fourth Circuit held that the parties' intent

should be ascertained, whenever possible, from language the parties employed in their contract.

377 F. App'x at 307.  Even when never signed or accepted, an architect's proposal that it would

own any copyrights is evidence that the architect did not agree to its client being a joint owner of the copyrights. *See Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). Here, in its written proposal for services for the Two Park Crest project, Humphreys included a provision on "Ownership of Documents," which stated: "**There is no implied license granted in this Agreement.**" (SOF ¶ 16 (emphasis added).) This proposed agreement shows that Humphreys did not intend to grant an implied license and did not intend to give any defendant permission to copy its Grant Park design. Likewise, during a meeting in The Penrose Group offices, Mr. Humphreys explained to Mark Gregg and Tim McDonald of The Penrose Group that the Grant Park design was a proprietary Humphreys design and that it was protected by copyright. (SOF ¶ 17.) No record evidence exists to the contrary. Humphreys is entitled to summary judgment on all defendants' implied license defenses.

**C.    Defendants Cannot Show Laches, Estoppel, Waiver, Or Unclean Hands**

Each defendant collectively asserts, as a single affirmative defense, that Humphreys' claims are barred in whole or in part by the doctrines of "laches, estoppel, waiver, and/or unclean hands." (App. at 6.) Summary judgment should be granted on all of these defenses.

**1.    Laches.** Laches, an equitable defense that requires a showing of unreasonable delay that prejudices the defendant, cannot shorten a statutory limitations period. Where "Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit" for filing suit. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001) ("Separation of powers principles thus preclude [the Court] from applying the judicially created doctrine of laches to bar a federal statutory claim that has been timely filed under an express statute of limitations." (citing *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 244 n.16 (1985) (applying "laches in an action at law would be novel indeed"), and *United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches

10

within the term of the statute of limitations is no defense at law.")).

The limitations period for bringing copyright infringement claims is three years after the claim accrues.  17 U.S.C. § 507(b); *Lyons*, 243 F.3d at 796.  Humphreys filed suit on April 9, 2013, which was well within three years of the accrual of its cause of action.  (Dkt. No. 1.)  In fact, Humphreys filed suit within three years of defendants' first meeting in the fall of 2010 to plan their design of the Two Park Crest Project, even though Humphreys had no notice at that time that its design would be used.  (SOF ¶ 12.)  The first time entry for the Park Crest Two project in Lessard's records is for preparation for a meeting with The Penrose Group on October 29, 2010.  (*Id*.)  The earliest dated drawing in Lessard's files is dated November 11, 2010.  (*Id*.) Humphreys filed its lawsuit within three years of either event.  Given those facts, no defendant even asserts the statute of limitations as a defense, which would fail outright.  Defendants' supposed laches defense likewise fails.

    **2. Estoppel.**  To establish an estoppel defense to copyright infringement, defendants must show that the Humphreys (1) misrepresented or concealed material facts, (2) intended or expected that defendants would act upon those misrepresentations or concealments, and (3) had actual or constructive knowledge of the true facts.  *See Service & Training, Inc. v. Data General Corp.*, 963 F.2d 680, 690 (4th Cir. 1994).  There is no evidence of any of these elements, much less all of them.  Defendants cannot show that they were "ignorant of the true facts" or relied on Humphreys' conduct to their injury.  The Penrose Group knew that the Grant Park design was a proprietary Humphreys design and that it was protected by copyright.  (SOF ¶¶ 16, 17.)  The Penrose defendants were thus on explicit written and verbal notice of Humphreys' copyright.  (SOF ¶¶ 16, 17.)  No other defendant even claims to have had any contact with Humphreys prior to this lawsuit.  For example, Christian Lessard denied even

11

knowing that Penrose Group asked Humphreys for a proposal on the Park Crest Two project. (SOF ¶ 18.)  Without any contact, defendants cannot satisfy the elements of estoppel.  Summary judgment on this affirmative defense is thus warranted.

   **3.  Waiver.**  Defendants' waiver defense is novel, and in any event lacks merit. The Fourth Circuit does not appear to have ever recognized waiver as a defense to a copyright infringement action, and district courts within the Fourth Circuit that have addressed the defense have rejected it.  In *ABC, Inc. v. Primetime 24, Joint Venture*, 17 F. Supp. 2d 478, 484-86 (M.D.N.C. 1998), for example, the court granted summary judgment in favor of the copyright owner on a waiver defense.  In rejecting the defense, the court explained that "[w]aiver does not occur merely if a plaintiff is aware of the defendant's infringement but fails to act."  *Id.* at 485. "Rather, the plaintiff must have actually undertaken acts inconsistent with its copyright" to demonstrate relinquishment of its rights, and the defendant in that case had no provided no such evidence.  *Id.*  Here, too, defendants have no evidence of acts undertaken by Humphreys that are inconsistent with enforcement of its copyright to suggest waiver of its rights.  Instead, the record is clear that Humphreys never authorized the use of its designs by defendants.  (SOF ¶¶ 13, 15, 17, 18, 20.)  *See supra* Part II.C.2.  Humphreys is entitled to summary judgment on the alleged defense of waiver.

   **4.  Unclean Hands.**  "Unclean hands" can be asserted only to bar claims for equitable relief.  *See ABC*, 17 F. Supp. 2d at 484.  Among the remedies available to Humphreys if it establishes copyright infringement is a permanent injunction.  *See* 17 U.S.C. § 502.  Any consideration of Humphreys' right to a permanent injunction is premature at this time.  With respect to legal remedies, defendants' assertion of "unclean hands" cannot apply as a matter of law.  Humphreys is entitled to partial summary judgment in that respect.

### D.       Defendants Cannot Show Copyright Misuse

No evidence exists to support defendants' "copyright misuse" defense and Humphreys'

own pleadings demonstrate that this defense lacks any basis.  (App. at 7-11.)  The Fourth Circuit

has explained that misuse of copyright is an equitable defense to a suit for copyright

infringement.  *See Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990).  The

defense, which is analogous to patent misuse, prevents the copyright holder from attempting to

secure an exclusive right or limited monopoly not granted by the Copyright Office.  In

*Lasercomb*, the Fourth Circuit explained that the copyright misuse precludes the copyright

holder from obtaining relief where it has tried to overreach its copyright.  *Id.* at 978.

In asserting their misuse defense, defendants refuse to accept Humphreys' actual pleading

of its claim, instead arguing that Humphreys is attempting to claim a monopoly on *individual*

*features or elements* of the building design.  For example, Northwestern alleges that "Humphreys

has asserted, in this and in other cases, that its copyright in the Grant Park design extends to

standard features; functional features; features driven by function; features required by code;

features required by location or other site characteristics; and to ideas, concepts, or principles."

(Dkt. No. 129 at 11-12.)  But Humphreys' Complaint makes no such claim.  Instead, Humphreys

claims a copyright in its Grant Park design for an *entire building* design.  The Complaint quotes

the statutory definition of an architectural work, and asserts a copyright for the Grant Park high-

rise—*i.e.*, the design of an entire building.  (Dkt. No. 109 at 9, ¶ 21.)  Citing the statute,

Humphreys further explained that its protected "design" means the "overall composition and

arrangement of spaces and elements" and "does not extend to individual standard features."  (*Id.*)

Defendants deposed Mr. Humphreys, both in his individual capacity and as Humphreys'

representative under Rule 30(b)(6), questioning him extensively about the scope of its copyright.

For example, he was asked if Humphreys' copyright covered every high-rise residential building.

13

He agreed "[t]hat there are many residential, high-rise residential buildings that would not be covered by the Grant Park copyright" and that infringement required copying the Grant Park design.  (SOF ¶ 14.)  Lessard's counsel asked the same question about many of the elements or features included in the Grant Park design, such as the use of two elevator lobbies, and Mr. Humphreys answered them the same way:   The copyright does not cover individual features, only the overall building design.  A building that includes one of these features, or even all of them, will not infringe the Grant Park copyright unless it copies in the manner set forth in the Grant Park design.  (SOF ¶14.)

Mr. Humphreys' testimony along with Humphreys' own pleadings show that it does not claim a monopoly in any individual feature or element of the Grant Park design.  What Humphreys claims is a copyright in its Grant Park design as an architectural work—the design of a building.  It is not misuse for Humphreys to hold infringers accountable.  Humphreys is entitled to summary judgment in its favor on this defense.

**E.      Defendants Cannot Show That Their Conduct Was Permitted "By The First Sale Doctrine Or The Doctrine Of Exhaustion"**

Each defendant's "first sale doctrine" and "exhaustion" defense lacks merit.  (App. at 11-12.)  The first sale doctrine allows the purchaser of a copyrighted product that is *lawfully made* to resell the product.  *See* 17 U.S.C. § 109(a); *Mathieson Assocs., Inc. v. Shoup*, 28 F. App'x 274, 275-76 (4th Cir. 2002) (per curiam) (holding that a license agreement allowed sale of a copyrighted photograph, so that a purchaser who resold photographs did not commit infringement).  In *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997), the Fourth Circuit explained the distinction between selling a lawful copy and selling an unlawful copy:   "Generally, as permitted by what is known as the first-sale doctrine, the copyright owner's right to distribute a copyrighted work does not prevent the owner of a lawful

14

copy of the work from selling, renting, lending or otherwise disposing of the lawful copy, but "distributing unlawful copies of a copyrighted work does violate the copyright owner's distribution right and, as a result, constitutes copyright infringement." *Id.* at 203.

"The first sale doctrine allows the purchaser of a copyrighted product to dispose of the product as he wishes"; it "does not permit the first purchaser to allow others to make copies of the copyrighted material. For example, a purchaser may lend a copy of a book to his neighbor, but the neighbor cannot photocopy the book." *Secure Services Technology, Inc. v. Time and Space Processing, Inc.*, 722 F. Supp. 1354, 1364 (E.D. Va. 1989) (citing *Red Baron-Franklin Park, Inc. v. Taito American Corp.*, 883 F.2d 275 (4th Cir. 1989)). As another court in the Fourth Circuit explained, an unauthorized copy "does not fit within the 'first sale' doctrine embodied in 17 U.S.C. § 109(a)." *Palmetto Builders & Designers, Inc. v. Unireal, Inc.*, 342 F. Supp. 2d 468, 473 (D.S.C. 2004).

Here, at no time did the Grant Park owners give permission to others to make copies or derivatives of the Grant Park design—indeed, they could not, as they had no right to Humphreys' Grant Park copyright other than via the building that Humphreys designed. (SOF ¶¶ 13, 15, 16, 17.) Humphreys retained all rights to its Grant Park design and has the sole authority to grant permission to copy that design. At no time did Humphreys authorize defendants to copy that design. (SOF ¶¶ 13, 15, 16, 17.) No evidence exists to the contrary. Accordingly, the first sale doctrine does not apply as a matter of law.

Additionally, a judicially created doctrine of exhaustion (a concept defendants improperly attempt to import from patent law, *see Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625-28 (2008)) does not apply in copyright infringement cases. Accordingly, summary judgment should be granted in Humphreys' favor as to these defenses.

15

### F.      Defendants' Copyright Registration Defenses Cannot Be Supported

The Penrose and Clark defendants (Penrose Group, PDT, Sixth Penrose, and Clark) assert

several technical challenges to Humphreys' copyright application for the Grant Park design.

(App. at 12-13.)  Even if their factual premises were correct (they are not), courts regularly reject

these arguments as a basis for invalidating the copyright.  "Courts have repeatedly excused a

wide range of errors" in copyright applications, such as "misidentification of copyright claimant,

misclassification of a work, misstatement of work's author, misstatement of a work's creation

and publication dates, and misstatement that a work is made for hire."  *One Treasure Ltd., Inc. v.*

*Richardson*, 202 F. App'x, 658, 660-61 (5th Cir. 2006); *Masquerade Novelty, Inc. v. Unique*

*Indus.*, 912 F.2d 663, 668 (3d Cir. 1990); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36

F.3d 1147, 1161 (1st Cir. 1984), *abrogated on other grounds*, *Reed Elsevier , Inc. v. Munchnick*,

559 U.S. 154, 165-66 (2010); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d

821, 828 (11th Cir. 1982).

### 1.      Defendants Have Not Satisfied The Requirements Of § 411(b)

All affirmative defenses of the Penrose and Clark defendants alleging that Humphreys

did not provide accurate information to the Copyright Office are barred by 17 U.S.C. § 411(b).

As Humphreys has shown above in Part II.A, the Copyright Act requires proof that inaccurate

information was included on the copyright application with knowledge that it was inaccurate,

and that the Register of Copyrights would have refused registration if it knew of the inaccuracy.

17 U.S.C. § 411(b)(1).  Before a district court can find that an application for registration would

have been refused, the Court must consult the Register about whether registration would have

been refused.  17 U.S.C. § 411(b)(2).  The Penrose and Clark defendants have not asked the

Court to do so, and have waived their defenses relating to Humphreys' copyright registration.

### 2.  Grant Park Is Not A Derivative Of Humphreys' Earlier Work

The Penrose and Clark defendants assert that Humphreys' copyright registration in the

Grant Park design is invalid because the design is allegedly a derivative of Humphreys' earlier

work.  (App. at 12.)  There is no evidence that Humphreys derived the Grant Park design from

any earlier design.  *See* 17 U.S.C. § 101 (defining a "derivative work" as "a work based upon one

or more preexisting works," including "any form in which a work may be recast, transformed, or

adapted").  To the contrary, the only evidence is that Humphreys created this work for the Grant

Park project.  (SOF ¶ 19.)

The presence of similar elements or features does not make a later work a derivative.  In

the Copyright Act, the "subject matter of copyright" expressly covers "original works of

authorship."  17 U.S.C. § 102(a).  The statute's plain language makes clear that "works," not

portions of works, are protected.  Likewise, the definition of an architectural work specifically

includes "the design of a building," and "the overall form as well as the arrangement and

composition of spaces and elements in the design."  17 U.S.C. § 101.  This is clear from the

legislative history:  "Creativity in architecture frequently takes the form of a selection,

coordination, or arrangement of unprotectible elements into *an original protectible whole*."  H.R.

Rep. No. 101-735, *reprinted in* 1990 U.S.C.C.A.N. 6935, 6949 (emphasis added).

It therefore is not relevant that Humphreys' prior works may contain elements or features

also found in the Grant Park design.  The very nature of an architectural work, as defined by

Congress, is that the "original protectible whole" is the "arrangement and composition of spaces

and elements in the design."  17 U.S.C. § 101.[5]  Because defendants cannot point to any evidence

that Grant Park is a derivative, summary judgment should be granted to Humphreys on this

---

[5] To be a derivative, the work must be substantially copied from a prior work.  1 *Nimmer on Copyright*, § 3.01; *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984).

affirmative defense.

In any event, the purported defense is immaterial.  Even if the Grant Park design were a derivative of Humphreys' earlier work, Humphreys may use that work to make a derivative.  The exclusive rights of a copyright owner include the right "to prepare derivative works based on the copyrighted work."  17 U.S.C. § 106(2).  Likewise, an author's copyright in a derivative of his own work also protects the earlier work.  *See Rexnord, Inc. v. Modern Handling Sys., Inc.*, 379 F. Supp. 1190, 1198-99 (D. Del. 1974).  In other words, when the parent work was created by the same author the copyright is still valid.  For instance, in *Ronald Mayotte & Associates v. MGC Building*, 885 F. Supp. 148, 152 (E.D. Mich. 1994), the defendants argued that an architect's copyright registration was invalid because it did not identify the work as a derivative of the architect's prior designs.  The court rejected this argument: "Plaintiffs' copyrighted plans therefore could not impermissibly 'derive' from Plaintiffs' own identical plans . . . ."  *Id.*

### 3.      Humphreys' Clients Were Not Joint Authors

The Penrose and Clark defendants claim that Humphreys' clients, Apex and Opus, contributed to the Grant Park design so that Humphreys was required to identify them as joint authors in its copyright application.  (App. at 13.)  This argument fails.  Courts have consistently rejected claims of joint authorship by clients of architects because the normal input of a client represents ideas (not protectable), which the architect then expresses in the tangible form of plans (protectable).  Opus and Apex's alleged contribution to the Grant Park design was no more than the normal input of a client.  That does not create joint authorship.

The Copyright Act defines a "joint work" as a work "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  In *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991), the

Second Circuit set forth the framework for determining joint ownership.[6]  The court examined

two factors: (1) the intent of the parties at the time the work was created and (2) the nature of the

parties' contributions to the work.  *Id.* at 506-08.  The first depends on how the parties regarded

themselves at the time the work was being created, and any contract between the parties is

informative.  *Id.* at 508.  The second examines whether the alleged joint author's contribution is

independently copyrightable because merely providing ideas is not enough, given that the

Copyright Act does not protect ideas but instead expressions of ideas.  *Id.* at 506-507.

Here, Opus and Apex did not intend to be joint authors, and the Owner Architect

Agreement expressly provided that Humphreys was the author of the Grant Park design, and that

Humphreys "is and shall be deemed to be the author of all 'architectural works' it generated in

connection with the Grant Park project, and is and shall be the owner of all copyrights and any

other common law or statutory rights associated with the building designs it generated in

connection with the Grant Park project."  (SOF ¶¶ 1,6.)

Defendants appear to place weight on the fact that an additional Opus entity involved in

the project was an architecture firm—Opus Architects and Engineers, Inc. ("Opus A&E").  (SOF

¶¶ 1, 6.)  But as the agreement makes clear, although an architecture and engineering company,

the role of Opus A&E was only "to review the Architect's submittals to the Owner . . . ."  (*Id.*)

An addendum to the agreement reiterated Opus A&E's role as the "Owner's authorized agent in

connection with reviewing and approving Contract Documents prepared by the Architect," and

_____

[6] The Fourth Circuit has not ruled on the requirements for authorship of joint works.  *See Brown v. Flowers*, 196 F. App'x 178 (4th Cir. 2006) (declining to address joint authorship in affirming Rule 12(b)(6) dismissal because joint authorship was not pleaded).  District courts in the Circuit, however, have followed *Childress v. Taylor* in deciding joint authorship.  *See L. Foster Consulting, LLC v. XL Group, Inc.*, No. 3:11-cv-800, 2012 U.S. Dist. LEXIS 93979, at *16-20 (E.D. Va. June 1, 2012), *approved and adopted in pertinent part*, 2012 U.S. Dist. LEXIS 93976 (E.D. Va. July 6, 2012); *Brown v. McCormick*, 23 F. Supp. 2d 594, 605-06 (D. Md. 1998).

further emphasized that "Opus A&E is **not deemed a co-architect** for purposes of this Agreement and does not assume any responsibility of Architect under this Agreement."  (SOF ¶¶ 1, 6 (emphasis added).)

In addition, the Standard Form of Architect's Services that Humphreys and Opus signed made clear that Humphreys had already prepared designs for the Grant Park project "for review and approval by Owner" by the time it interacted with Opus.  (SOF ¶¶ 1, 6.)  The agreement between Opus and Humphreys therefore acknowledged that Humphreys had already completed the conceptual design of the Grant Park project and that Humphreys would perform the design development.  Opus A&E would review the Humphreys designs, but specifically was not a co-architect.  Under the express terms of the agreement, Humphreys was the author of the Grant Park design, and is the owner of all architectural works copyrights in that design.

This contractual language defeats a claim that the architect's client is a joint author.  *See Warren Freedenfeld Assocs., Inc. v. McTigue*, No. 05-11573, 2007 U.S. Dist. LEXIS 17137, at *5-11 (D.C. Mass. Mar. 9, 2007) ("The plain language of the Agreement makes clear that at its inception the parties did not contemplate giving recognition to McTigue as the joint author of the plans, whatever contribution he might make to the ultimate design of the hospital."),[7] *aff'd on other grounds*, 531 F.3d 38 (1st Cir. 2008); *see also HRH Architects, Inc. v. Lansing*, No. 1:08-cv-1479, 2009 U.S. Dist. LEXIS 46255, at *14-15 (N.D. Ga. Apr. 22, 2009) (enforcing contract to deny owner's claim of co-ownership of design).  And with respect to the second joint-author factor, numerous courts have held that routine client involvement such as providing ideas, suggesting changes, or giving overall direction to the project does not make the client a joint

---

[7] Although the opinion is based primarily on the terms of the AIA contract, the court also noted that McTigue's contributions to the design were typical for a client in the normal architect-client relationship, following *Childress v. Taylor* and *Aitken, Hazan, Hoffman, Miller P.C. v. Empire Constr. Co.*, 542 F. Supp. 252, 259 (D. Neb. 1982).

author or co-author.[8]

Further, defendants cannot claim that Opus or Apex is a joint author when Opus and

Apex make no such claim.  In *Metropolitan Regional Information Systems, Inc. v. American*

*Home Realty Network, Inc.*, 722 F.3d 591 (4th Cir. 2013), the court rejected defendants'

argument in the context of a transfer of copyright ownership.  Where the copyright author

appears to have no dispute with an assignee, it would be anomalous to allow a third-party

infringer "to fabricate for its own benefit a dispute between [the author] and its subscribers over

copyright ownership."  *Id.* at 600-01; *accord Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586,

592-93 (7th Cir. 2003); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96,

99 (11th Cir. 1995).

Defendants' claims of joint authorship do not satisfy the statutory requirements and the

case law interpreting them.  Humphreys is entitled to summary judgment on this issue.

### 4.     The Grant Park Design Was Unpublished When It Was Registered

The Penrose and Clark defendants also seek to fault Humphreys for "fail[ing] to provide

the publication date of" the Grant Park design in its copyright application.  (App. at 13.)  But

Humphreys had no obligation to provide a publication date because the Grant Park design had

not been published before the application was filed.

---

[8] *See Watkins v. Chesapeake Custom Homes, LLC*, 330 F. Supp. 2d 563, 572 (D. Md. 2004) (clients' illustrations of how they wanted the builder's standard plans modified did not give them any ownership interest in the copyrights); *Fred Riley Home Building Corp. v. Cosgrove*, 864 F. Supp. 1034, 1037-43 (D. Kan. 1994) ("although a builder presents ideas and concepts to a designer who prepares the architectural plans and drawings, including sketches of concepts which become a part of the final plans and drawings, and retains approval authority thereafter, such participation is insufficient to establish a claim of co-authorship); *Zitz v. Pereira*, 119 F. Supp. 2d 133, 145-46 (E.D.N.Y. 1999) (holding that a contractor that provided a floor plan and a model to an architectural firm, which created architectural plans from them, was neither an author nor a co-author); *HRH Architects*, 2009 U.S. Dist. LEXIS 46255, at *16 (rejecting the owner's claim that it was a co-owner based on providing "design parameters" and "concepts" to the architect and never requested to be identified as the author).

Under the Copyright Act, "[p]ublication" is defined as "the distribution of copies or phonorecords of a work ***to the public by sale or other transfer of ownership, or by rental, lease, or lending***" and includes "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display."  17 U.S.C. § 101.  Thus, by statute, distribution to a limited class of persons for a limited use does not constitute publication.  Indeed, the Act further provides that "[a] public performance or display of a work does not of itself constitute publication."  *Id.*

As the First Circuit has explained in an architectural plans case, distribution of a copyrighted work to a limited class of persons for a limited purpose is not "publication."  *See John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 35-36 (1st Cir. 2003).[9]  Thus, submission of plans to local authorities for approval, or circulation of plans to subcontractors, constitutes only limited distribution and thus does not satisfy § 101.  *Id.* at 36. Likewise, displaying plans to the public did not constitute publication.  *Id.* at 37-38.  Merely showing plans to a public audience does not convey a possessory interest in the plans.  *See id.* at 37 ("[A] sine qua non of publication should be the acquisition by members of the public of a possessory interest in tangible copies of the work in question" (quoting 1 *Nimmer on Copyright* § 4.07, at 4-42)).  This comports with the statutory provision making clear that public "display" of the work "does not constitute publication."  *Id.* at 38 (citing 17 U.S.C. § 101).

Defendants can point to no evidence that Humphreys published the Grant Park design to the general public before filing its copyright application, because there is none.  And to the

---

[9]  The court was required to address "publication" because the defendant argued that the plans had been published without a copyright notice in 1987, when the law required that published works bear a copyright notice or else copyright protection was lost.  *Id.* at 34.  This requirement of copyright notice, however, ended in 1989 when the Berne Convention Implementation Act made notice optional.  *See id.* at 35.

extent defendants seek to rely on Humphreys' submissions for approval of its design, (SOF ¶ 19), such a display or limited showing of its design does not constitute publication under § 101.

In short, defendants must offer evidence to overcome the presumption of validity. They cannot. Humphreys should be granted judgment in its favor on all of these affirmative defenses.

### G.      Lessard's Defenses And Counterclaim Based On A Florida Architect's Design Have No Merit

The Lessard defendants (collectively, "Lessard") have found and paid a witness to claim that he "disclosed" the design of a high rise residential building to Mark Humphreys in September 2001. As affirmative defenses and a counterclaim, they claim that the Humphreys' Grant Park architectural work was copied from a design of this architect, Robert M. Swedroe. (App. at 14-17.) Lessard's illegal and unethical conduct in paying Mr. Swedroe substantial compensation, including a contingent fee interest in this case, requires exclusion of all evidence related to Mr. Swedroe and his design. In addition, Mr. Swedroe's testimony does not constitute evidence of copying by Humphreys because Humphreys never saw Mr. Swedroe's design. Finally, Lessard does not own valid copyrights in the Harbor Towers design, either as an architectural work or as an architectural drawing.

### 1.      The Court Should Strike All Evidence Related To Mr. Swedroe And His Design Because Lessard Is Paying Him For His Testimony

As explained in Humphreys' concurrently filed Motion to Strike Robert Swedroe's Testimony, the evidence purportedly in support of Lessard's counterclaim and defenses based on Mr. Swedroe's design should be struck as a sanction for the unethical and illegal conduct of Lessard and its lawyers. If the Court grants that motion, Lessard has no evidence to support its counterclaim and defenses, and summary judgment should be granted to Humphreys.

### 2.      No Evidence Of Copying

The core of Lessard's affirmative defenses and counterclaim based on Mr. Swedroe's

Harbor Towers design is that he supposedly "disclosed" the design at a conference on September 6, 2001, where he and Mark Humphreys were both speakers. (App. at 14-17.) Lessard claims that this is evidence of copying by Humphreys. Lessard, however, has no evidence of direct copying. In fact, the only evidence in this case regarding creation of the Grant Park work is that Humphreys created it as an original work for the Grant Park Condominiums project. (SOF ¶¶ 5, 7.) Thus, to prove copying, Lessard apparently intends to rely on the test for circumstantial evidence that copyright owners can use to prove infringement. *See Lyons*, 243 F.3d at 801 (explaining that copying can be proven through either direct or circumstantial evidence). If there is no direct evidence of copying, a plaintiff may create a presumption of copying establishing that (1) "the defendant had access to the copyrighted work and (2) "the defendant's work is 'substantially similar' to the protected material." *Id.* (citing *Towler v. Sayles*, 76 F.3d 579, 581-82 (4th Cir. 1996)). To prove the access prong of the presumption, the copyright owner must show that the accused infringer had an opportunity to view or copy the copyrighted work. *See Building Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 578-79 (4th Cir. 2013) (affirming summary judgment of no infringement because the copyright owner could show no more than a "mere possibility" of access).

The undisputed evidence is that Mr. Swedroe did not show his Harbor Towers design during the September 6, 2001 conference. (SOF ¶¶ 20, 21.) Lessard spent almost two months with its "consultant" Mr. Swedroe developing his story about supposedly "disclosing" the Harbor Tower design to Mr. Humphreys during a conference in 2001. But when Mr. Swedroe was finally deposed, his testimony did not establish that Mr. Humphreys had any access to the Harbor Tower design. In fact, Mr. Swedroe was not sure if he had even mentioned the Harbor Towers building during his speech. (SOF ¶ 21.) He said "I don't know that I mentioned

buildings by name" during the 2001 conference.  (SOF ¶ 21.)

Moreover, shortly before his deposition, Mr. Swedroe found the actual bundle of slides he had used during the conference.  (SOF ¶¶ 21, 29, 30, 31.)  When asked if the slides included a photograph of the Harbor Tower building, Mr. Swedroe stated: "No, there's not of that building or of many of the other buildings that I talked about."  (SOF ¶¶ 21, 29, 30, 31.)  And when asked if the slides contained "any representation of a floor plan of the Harbor Tower building," he stated: "There's no floor plan from Harbor Tower II if that's your question."  (SOF ¶¶ 21, 29, 30, 31.)  This evidence fails to establish access as a matter of law.

At most, Lessard could be arguing that orally describing an idea, concept, or feature is somehow evidence of access.  For the same reason, however, that one cannot own a copyright in an idea, no one can copy an idea.  There is no evidence that Mr. Humphreys, or anyone at Humphreys, ever saw Mr. Swedroe's Harbor Towers design.  With no evidence of direct copying or access to Mr. Swedroe's work, there is no evidence that Humphreys copied that design.[10]

### 3.    Lessard's Search For Prior Art Has No Place In A Copyright Case

Lessard also appears to claim that the Swedroe design renders Humphreys' copyright invalid merely because the Swedroe design is older than the Grant Park design.  (App. at 15.)  Such "prior art" and "novelty" concepts, however, do not apply to copyrights.

The Supreme Court made this clear in *Feist*.  Distinguishing patent law, the Court explained that in copyright law, the touchstone for liability is copying, not mere similarity: "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying."  *Feist*, 499 U.S. at 345.  For instance, in 1924, Judge Learned Hand examined the common law of copyright and

---

[10] In light of the absence of evidence of access, which is dispositive, Humphreys does not address the complete lack of substantial similarity between the Swedroe and Grant Park designs.

concluded that the existence of prior art does not invalidate a copyright as long as the copyright

owner created his work independently of the prior art.  *See Fisher v. Dillingham*, 298 F. 145

(S.D.N.Y. 1924).  Again at the Second Circuit, Judge Hand explained this basic difference

between patent law and copyright law:

> We are to remember that it makes no difference how far the play was anticipated
> by works in the public demesne which the plaintiffs did not use.  The defendants
> appear not to recognize this, for they have filled the record with earlier instances
> of the same dramatic incidents and devices, as though, like a patent, a copyrighted
> work must be not only original, but new.  That is not however the law.

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 53 (2d Cir. 1936).  Likewise, in *Stein v.*

*Mazer*, 204 F.2d 472, 474-75 (4th Cir. 1953), *aff'd*, 347 U.S. 201 (1954), the Fourth Circuit

followed *Sheldon* and subsequent case law to hold that the existence of similar lamps in the

public domain did not invalidate a copyright because there was no evidence that the copyright

owner copied them.  When it affirmed, the Supreme Court also cited *Fisher v. Dillingham* with

approval.  *See* 347 U.S. at 217.

Given this long line of authority, when copyright infringers like defendants nonetheless

attempt to bring prior-art concepts into a copyright infringement case, their efforts fail.  For

example, in *FASA Corp. v. Playmates Toys, Inc.*, 912 F. Supp. 1124 (N.D. Ill. 1996), the court

rejected prior art as a defense to copyright infringement, explaining that "[n]ovelty or uniqueness

is not a requirement for copyright protection, and 'the search for prior art that frequently goes

into a challenge to a patent plays no part in a copyright case.'"  *Id.* at 1147 (citing 2 *Nimmer on*

*Copyright* § 2.01[A] n.11; 3 *Nimmer on Copyright* § 12.11[B]); *see also Games Workshop, Ltd.*

*v. Chapterhouse Studios, LLC*, No. 10 C 8103, 2012 U.S. Dist. LEXIS 168360, at *28 (N.D. Ill.

Nov. 27, 2012) (defendant "cannot defeat [copyright infringement] claims merely by pointing to

evidence of prior similar works"); *Aga Correa & Son v. Nautical Gold Creations*, No. 05 Civ

624, 2005 U.S. Dist. LEXIS 5955, at *5-6 (S.D.N.Y. Apr. 6, 2005) ("Defendants' patent law-

based affirmative defenses [including prior art] are entirely inapposite"); *Queenie, Ltd. v. Hot Stuff, Inc.*, 102 F. Supp. 2d 512, 513 n.2 (S.D.N.Y. 2000) (prior art no defense to copyright infringement); *Synercom Tech., Inc. v. Univ. Computing Co.*, 462 F. Supp. 1003, 1010 (N.D. Tex. 1978) ("Although proof of prior art is familiar to patent law, under copyright law the 30% nonoriginal content does not void the copyright as to the 70% or even the 30%, at least as an integrated part of a product whose whole is original"; "[u]nlike the patent law, originality is not first idea but independent conception").  Defendants' "prior art" defenses should be rejected as a matter of law.

### 4.   Mr. Swedroe Did Not Transfer An Architectural Works Copyright

The Copyright Act requires that no action for copyright infringement may be instituted until the work has been registered with the Copyright Office.  *See* 17 U.S.C. § 411(a).  The Act also requires that only the owner of the copyright may sue for infringement.  *See* 17 U.S.C. § 501(b).  Lessard Design claims that it applied for an architectural works copyright in Mr. Swedroe's Harbor Towers design (App. at 14-17), but Lessard Design does not own such a copyright and its application for such a copyright is false and invalid.

The most that Lessard Design purportedly owns is a drawing, not an architectural work.  Under 17 U.S.C. § 204(a), a transfer of copyright ownership "is not valid unless" it is "in writing."  Mr. Swedroe supposedly conveyed his design in the "Copyright Assignment."  (SOF ¶¶ 23, 26.)  Thus, Lessard Design could own only what the "Copyright Assignment" specifically describes.  In that document, Mr. Swedroe transferred "all right, title, and interest, including copyright, in and to an architectural design for a floor plan for a high rise residential building (the 'Work'), as shown in Exhibit 1."  (SOF ¶¶ 23, 26.)  A drawing labeled "Exhibit 1" was attached to the "Copyright Assignment."  (SOF ¶¶ 23, 26.)  "Exhibit 1" is a drawing of a building floor plan.  It does not depict the overall arrangement and composition of spaces and

elements to demonstrate an "architectural work" as defined by the Copyright Act.  *See supra* Part
I.  Accordingly, no architectural works copyright has been transferred to Lessard Design.

Because Lessard Design has failed to obtain assignment of more than a single floor plan
drawing, it cannot obtain a copyright on an "architectural work," notwithstanding its application
for such.  Copyright Office regulations require an applicant for an architectural works copyright
to deposit with the Office specified drawings sufficient to show the building design, including
floor plans and elevations.  *See* 17 C.F.R. § 202.20.  Lessard Design did not follow those
requirements.  Its application does not include any elevations.  (SOF ¶¶ 29, 30, 31.)  Indeed,
Lessard Design could not include elevation drawings because it did not receive any in the
"Copyright Assignment" and Mr. Swedroe confirmed that he never gave any elevations to
Lessard Design or its lawyers.  (SOF ¶¶ 29, 30, 31.)  In addition, the simplified floor plan of
"Exhibit 1" attached to Lessard Design's copyright application does not meet other requirements
of 17 C.F.R. § 202.20, such as providing the "entire copyrightable content" of the alleged
architectural work.  Mr. Swedroe agreed that "Exhibit 1" does not show anyone what the
building looked like.  (SOF ¶¶ 29, 30, 31.)

Even setting these inadequacies aside, Lessard Design's application is not eligible for
copyright protection as an architectural work because the Swedroe design was created before the
effective date of the AWCPA.  That Act protects architectural works only if the design was
either (1) created after the December 1, 1990 effective date of the Act or (2) if created before the
effective date, was not published before then, but only if the building was actually constructed
before January 1, 1993.  *See* 37 C.F.R. § 202.11(d)(3).  Harbor Towers was constructed in 1993,
so the latter option does not apply.  (SOF ¶ 28.)  Neither does the former.  Lessard's lawyer
stated that the Swedroe design was created in 1988, and Mr. Swedroe testified that he had no

reason to disagree with this.  (SOF ¶ 27.)  In fact, given that Harbor Towers was constructed in 1993, Mr. Swedroe agreed that the design was probably created more than three years before. (SOF ¶¶ 27, 28.)  Because the evidence shows that the Harbor Towers design was created before the effective date of the AWCPA, that statute does not apply and there is no architectural works copyright protection available for the Harbor Towers design.

Without a valid registration, and because it does not actually own an architectural works copyright, Lessard Design cannot meet the statutory requirements for bringing an infringement claim based on an "architectural work" in the Harbor Towers design.

### 5.   Lessard's Registered Drawing Was Created Only For This Lawsuit

For an independent reason, Lessard Design cannot base any infringement claim on the floor plan design shown in "Exhibit 1."  As Mr. Swedroe testified, that drawing was created only for purposes of this lawsuit, sometime after September 24, 2013.[11]  (SOF ¶ 26.)  A copyright in a visual work, such as a drawing, extends only to the drawing itself.  *See* 17 C.F.R. § 202.19 (deposit copy must be the "best edition" of the work).  At most, therefore, the only copyright in an architectural drawing that Lessard Design has acquired and for which it has sought copyright protection is a drawing that was created in September or October 2013.  It is not possible for Humphreys, in creating the Grant Park design, to have copied or infringed a work that did not exist until ten years later, when Lessard's lawyers began courting Mr. Swedroe in 2013.

### CONCLUSION

Humphreys respectfully requests that the Court grant its motion.

---

[11] Although Mr. Swedroe began with design files or construction drawings created several years ago for the Harbor Towers project, he did not assign those to Lessard; instead, he altered those documents to leave out dimensions, notes, and other markings that he thought Lessard's lawyers may not understand.  (SOF ¶ 27.)   In fact, he admitted that "Exhibit 1" was not a true copy of any drawing used for the Harbor Towers project.  (*Id.*)

Dated: December 2, 2013                    Respectfully submitted,


                                           */s/ Walter D. Kelley, Jr.*
                                           Walter D. Kelley, Jr. (VSB No. 21622)
                                           Jennifer L. Swize (*pro hac vice*)
                                           Tara Lynn R. Zurawski (VSB No. 73602)
                                           JONES DAY
                                           51 Louisiana Avenue, NW
                                           Washington, DC 20001
                                           Tel: (202) 879-3939
                                           Fax: (202) 626-1700
                                           Email: wdkelley@jonesday.com
                                           Email: jswize@jonesday.com
                                           Email: tzurawski@jonesday.com

                                           Patrick Zummo (*pro hac vice*)
                                           Susan R. Agee (*pro hac vice*)
                                           LAW OFFICES OF PATRICK ZUMMO
                                           3900 Essex Lane, Suite 800
                                           Houston, Texas 77027
                                           Tel: (713) 651-0590
                                           Fax: (713) 651-0597
                                           Email: pzummo@zoomlaw.com
                                           Email: agee@anvilcom.com

                                           *Counsel for Plaintiff Humphreys & Partners
                                           Architects, L.P.*

## CERTIFICATE OF SERVICE

I certify that on December 2, 2013, a copy of the foregoing was filed electronically with the Clerk of Court using the ECF system, which will send notification to the following ECF participants:

Antigone G. Peyton
Jennifer S. Atkins
Kandis M. Koustenis
Cloudigy Law, PLLC
8300 Greensboro Drive, Suite 1250
McLean, VA 22102
antigone.peyton@cloudigylaw.com
jennifer.atkins@cloudigylaw.com
kandis.koustenis@cloudigylaw.com

Paul A. Varela
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
pvarela@wthf.com

*Counsel for The Penrose Group; PDT Builders, LLC; Clark Builders Group LLC; Sixth Penrose Investing Company, LLC; Park Crest SPE Phase I, L.L.C.; and Penrose/Donohoe Tysons, LLC*

Patrick Coyne
Christopher P. Foley
Hala Mourad
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
patrick.coyne@finnegan.com
christopher.foley@finnegan.com
hala.mourad@finnegan.com

Randal W. Wax
6308 Sixteenth Street, N.W.
Washington, DC 20011
randal_wax@yahoo.com

*Counsel for Lessard Design Inc.; Lessard Group Inc.; and Christian J. Lessard*

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, DC 20036
cmead@londonandmead.com

Craig C. Reilly
111 Oronoco Street
Alexandria, Virginia 22314
craig.reilly@ccreillylaw.com

*Counsel for Northwestern Investment Management Company, LLC and Northwestern Mutual Life Insurance Company*

*/s/ Walter D. Kelley, Jr.*
_____
Walter D. Kelley, Jr. (VSB No. 21622)
*Counsel for Plaintiff Humphreys & Partners Architects, L.P.*