IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **HUMPHREYS & PARTNERS** | ) | |
| **ARCHITECTS, L.P.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:13-cv-433** |
| **v.** | ) | |
| | ) | |
| **LESSARD DESIGN, INC., *et al.*,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

At issue post-judgment and post-appeal in this copyright infringement case is defendants'

claim for attorney's fees and costs pursuant to Section 505 of the Copyright Act of 1976, which

provides that "the Court in its discretion may allow the recovery of full costs" and "reasonable

attorney's fees to the prevailing party." 17 U.S.C. § 505. This dispute arises from plaintiff's

recent copyright infringement suit, which, in the end, was resolved by entry of summary

judgment in favor of defendants. Plaintiff's appeal failed as the Court of Appeals for the Fourth

Circuit affirmed the grant of summary judgment. *See Humphreys & Partners Architects, L.P. v.

Lessard Design, Inc.*, 790 F.3d 532, 543 (4th Cir. 2015). Now at bar are defendants' fee claims,

which plaintiff disputes, raising the following issues:

(1)  whether any award for attorney's fees and costs is appropriate here;

(2)  whether the fees claimed by defendants are reasonable in the circumstances;

(3)  whether defendants should recover the taxable costs they seek; and

(4)  whether defendants should recover the non-taxable costs they seek.

1

## I.

Plaintiff Humphreys & Partners Architects, L.P. is a Texas limited partnership that designs multi-family residential buildings. The eight defendants still remaining in this case fall into three groups: (1) the Lessard defendants, (2) the Penrose defendants, and (3) the Northwestern defendants.[1] Another defendant, Clark Builders Group, LLC, initially moved for attorney's fees, but withdrew that motion after reaching an agreement with plaintiff with respect to fees.

In 2000 and 2001, plaintiff designed a high-rise residential tower known as Grant Park, which it registered as an architectural work with the United States Copyright Office in 2003. Thereafter, in 2004, the Grant Park building was constructed in Minneapolis, Minnesota. Grant Park is a 27–story condominium building that contains 11 units per floor. The building has two separate elevator cores, and each floor has two elevator lobbies. On a typical floor, about half the units open directly into one lobby and the other half open directly into the other lobby. Each lobby also provides access to a stairwell and to a trash chute or to a mechanical room. An unfinished service corridor connecting the lobbies allows residents to access both utility rooms and both stairwells. The dual-core layout eliminates the need for a finished central hallway and is intended to promote a sense of community among the units sharing a lobby.

In 2008, the Penrose defendants began developing a high-rise apartment building known as Two Park Crest for construction in McLean, Virginia. In 2010, the Penrose defendants solicited design proposals from three architecture firms, including plaintiff and the Lessard defendants. In September and October 2010, plaintiff submitted illustrations of its Grant Park design and then met with the Penrose defendants to discuss the design.

---

[1] For a detailed description of the defendants within each group, see *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 43 F. Supp.3d 644, 651-53 (E.D. Va. 2014).

On November 3, 2010, the Penrose defendants informed the Lessard defendants that they wanted the Two Park Crest design to feature dual elevator cores connected by a service corridor and emailed the Lessard defendants the Grant Park floorplan to illustrate the concept. Shortly thereafter, on November 15, the Lessard defendants emailed the Penrose defendants a preliminary sketch of a design with two elevator cores. In response, the Penrose defendants indicated that the design was consistent with their request. The Lessard defendants ultimately submitted a design for a 19–story building with 17 units per floor that incorporated three elevator cores—two passenger elevator cores and a service elevator core. On a typical floor, about half of the units would open directly into each passenger elevator lobby.

On November 17, 2010, the Penrose defendants informed plaintiff that they had hired the Lessard defendants to design the Two Park Crest project. The Penrose defendants subsequently sold the project to the Northwestern defendants. In November 2011, the Northwestern defendants hired the Clark Builders Group to construct Two Park Crest, and in January 2012, the Clark Builders Group began constructing the building.

In April 2013, plaintiff filed an action against the defendants under 17 U.S.C. § 101, *et seq.*, alleging one count of copyright infringement against each defendant. Following discovery, the parties filed cross-motions for summary judgment. Defendants argued that they were not liable to Humphreys because, *inter alia*, they did not copy the Grant Park design and the two designs were not substantially similar. Defendants supported their motions with expert reports filed by three architects, who concluded that the two designs were not substantially similar.

In response, plaintiff argued that the Lessard defendants copied the Grant Park design after receiving that design from the Penrose defendants. Plaintiff claimed that the speed with which the Lessard defendants created the Two Park Crest design was direct evidence of copying

3

and that the similarities between the two designs was circumstantial evidence of copying. Plaintiff supported its claim that the two designs are substantially similar with a declaration from an expert, who identified nine features shared by both designs.[2] Plaintiff argued that the presence and arrangement of these nine features in Two Park Crest infringed plaintiff's copyright in the Grant Park design.

On September 2, 2014, defendants' motions for summary judgment were granted on the grounds that: (i) there was no direct evidence of copying, and (ii) no reasonable jury could find that the Grant Park and Two Park Crest designs are extrinsically similar. An Order and Memorandum Opinion issued, holding that the two designs were not extrinsically similar for two independently sufficient reasons: (i) neither the nine features nor their arrangement in Grant Park were eligible for copyright protection; and (ii) those nine features were presented and arranged differently in the Two Park Crest design. *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 43 F. Supp.3d 644, 670-79 (E.D. Va. 2014). In regard to the arrangement of the nine features in the two designs, defendants' experts explained how the two designs differed with respect to their size, footprints, floorplans, and exterior appearances. Plaintiff's expert, in contrast, offered no evidence that the two arrangements were extrinsically similar. As a result of the extrinsic similarity analysis, defendants were awarded summary judgment. Plaintiff timely appealed, and on June 23, 2015, the Fourth Circuit panel unanimously affirmed the decision. *See Humphreys*, 790 F.3d at 543.

---

[2] The nine features are: (1) high-rise residential building; (2) two elevator cores connected by a fire or service corridor; (3) direct access from the residential units to an elevator lobby; (4) a barbell-shaped floor plan; (5) mechanical/electrical space at one end of the service corridor and a trash chute at the other end; (6) exit stairwells adjacent the elevators (7) corner units with diagonal entry access; (8) alternating vertical elements on the façade; and (9) projecting elements at the cornice at the roof line. *Humphreys & Partners Architects, L.P.*, 43 F. Supp.3d at 667.

Promptly thereafter, each of the defendant groups moved to recover full costs and reasonable attorney's fees. The Clark Builders Group withdrew its motion after it entered into an undisclosed agreement with Humphreys. Thus, the Lessard defendants, the Northwestern defendants, and the Penrose defendants remain as parties seeking recovery of attorney's fees and full costs.

The Lessard defendants seek $1,403,121.60 in attorney's fees and $463,530.91 in full costs.[3] The Penrose defendants seek $990,995.00 in attorney's fees and $144,292.00 in full costs.[4] The Northwestern defendants seek $246,775.00 in attorney's fees and 7,093.50 in taxable costs.

## II.

The Copyright Act of 1976 provides, in pertinent part, that in any copyright infringement action "the court in its discretion may allow the recovery of full costs" and "may also award reasonable attorney's fees to the prevailing party." 17 U.S.C. § 505. By its terms, Section 505 does not mandate an automatic fee award to the prevailing party in every case. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Rather, the decision whether to award recovery is committed to the discretion of the trial court. *See Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). The fee applicant bears the burden of establishing its entitlement to a fee award. *See id.*

## III.

Analysis properly begins by considering whether defendants are prevailing parties, and therefore eligible to recovery attorney's fees and costs pursuant to Section 505. Plaintiff does not dispute that the Penrose defendants and the Northwestern defendants are prevailing parties, but

---

[3] This includes claims for $426,593.91 in non-taxable costs and $36,937.00 in taxable costs.

[4] This includes claims for $107,841.85 in non-taxable costs and $36,450.51 in taxable costs.

plaintiff does dispute that the Lessard defendants share that status. Specifically, plaintiff contends that the Lessard defendants are not prevailing parties because the Lessard defendants lost on a counterclaim in the underlying dispute.

Plaintiff's argument fails because plaintiff sets the bar too high, as a prevailing party need not be a *completely* prevailing party. In this respect, the Supreme Court has defined "prevailing party" as "a party in whose favor a judgment is rendered, regardless of the amount awarded" *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) (quoting Black's Law Dictionary 1145 (7th ed. 1999)).[5] A party "may be considered [a] 'prevailing part[y]' for attorney's fees purposes if [it] succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). Importantly, a defendant's failed counterclaim does not alter the defendant's status as a prevailing party. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 652 (4th Cir. 2002). Here, the Lessard defendants are appropriately prevailing parties, despite losing on their counterclaim. The Lessard defendants received the relief they sought in defending plaintiff's copyright claim; indeed, they prevailed on nearly every issue raised in the case.[6]

Plaintiff cites cases from the Second and Eighth Circuits for the proposition that neither litigant is "the prevailing party" when a defendant's failed counterclaim was something more

---

[5] *See also Doe v. Boston Pub. Sch.*, 358 F.3d 20, 25 (1st Cir. 2004) (noting that *Buckhannon*'s definition of "prevailing party" extends consistently to federal fee-shifting provisions).

[6] Plaintiff appealed on eleven separate issues, and the Fourth Circuit affirmed in all respects. *See Humphreys*, 790 F.3d at 543.

than purely defensive.[7] Plaintiff also cites a recent district court decision as illustrative of this principle. *See Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 412 F. Supp.2d 571 (E.D. Va. 2006).[8]

Carefully read, however, these cases are distinguishable and do not support the proposition for which they are cited by plaintiff. *Kropp v. Ziebarth* is plainly distinguishable. There, the Eighth Circuit concluded that neither party was a prevailing party, not simply because the defendant's counterclaim was more than defensive, but rather because both parties won an award of damages equal in amount on their respective claims, and hence the parties were in equipoise with respect to their relative success. 601 F.2d at 1358. Thus, *Kropp* is factually distinguishable and does not stand for the proposition that a prevailing party must be a completely prevailing party. Similarly, *Srybnik v. Epstein* is also distinguishable. There, the Second Circuit did not conclude, as a matter of law, that a defendant who loses an offensive counterclaim cannot be a prevailing party, but rather that the lower court did not abuse its discretion in determining that such a defendant was not a prevailing party. 230 F.2d at 686. Similarly, the district in *Tao* reached its conclusion within the province of its discretion under the relevant statute. 412 F. Supp.2d at 574 (citing *Testa v. Village of Mundelein*, 89 F.3d 443, 447

---

[7] *See, e.g., Kropp v. Ziebarth*, 601 F.2d 1348, 1358 n.27 (8th Cir. 1979) ("[W]hen a defendant counterclaims for affirmative relief and neither party prevails on its claim, it is quite appropriate to deny costs to both parties."); *Srybnik v. Epstein*, 230 F.2d 683, 686 (2d Cir. 1956) ("In a case such as this where the defendant counter-claims for affirmative relief and neither party prevails on its claim, it is quite appropriate to deny costs to both parties.").

[8] In *Tao*, both the plaintiff and the defendant submitted a bill of costs after the district court dismissed the complaint and counterclaims. Defendant argued that it was the prevailing party even though is counterclaim was dismissed on summary judgment. *Id.* at 578. The Court rejected the defendant's argument that the counterclaim was "only defensive" because it "attempt[ed] to impose an injunction prohibiting specified conduct" and "to win 'punishing damages,'" both of which the district court deemed offensive aims. *Id.* The district court ruled that neither party was "the prevailing party" and awarded no costs. *Id.* at 581.

(7th Cir. 1996) (explaining that district courts have "wide discretion" in cases that have a "mixed outcome"). Thus, contrary to plaintiff's contention, neither *Srybnik* nor *Tao* stands for the proposition that a prevailing party must be a completely prevailing party.

In sum, the Lessard defendants—along with the Penrose defendants and the Northwestern defendants—are prevailing parties for purposes of recovering fees and costs under Section 505. Although the Lessard defendants lost on their counterclaim, they prevailed in all other respects.

## IV.

Analysis next properly considers whether attorney's fees and costs should be awarded to defendants in this case pursuant to Section 505. The statutory language simply leaves the decision to the "discretion" of the court, but the Supreme Court and the Fourth Circuit have provided some guidance on the question. 17 U.S.C. § 505.

The Supreme Court has made clear that, when applying Section 505, a court must use an "evenhanded approach in which no distinction is made between prevailing plaintiffs and prevailing defendants" when applying Section 505. *Fogerty*, 510 U.S. at 521. In so holding, the Supreme Court expressly rejected (i) the "dual standard" under which "plaintiffs [would] generally [be] awarded attorney's fees as a matter of course, while prevailing defendants [would be required to] show that the original suit was frivolous or brought in bad faith," and (ii) the "British Rule," which would allow *all* prevailing parties to recovery of attorney's fees as a matter of course, absent exceptional circumstances. *Id.* at 520, 533. Instead, the Supreme Court, without being specific, pointed to a middle road between these two positions, namely the evenhanded approach. In justifying the evenhanded approach, the Supreme Court stated that the "a defendant seeking to advance meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious infringement

claims." *Id.* at 527. Importantly, in adopting the evenhanded approach, the Supreme Court made clear that "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." *Id.* at 534 (citation omitted). Nonetheless, the Supreme Court invited lower courts to utilize "several nonexclusive factors to guide [their] discretion." *Id* at. 534 n.19.[9] Accordingly, the Fourth Circuit has prescribed four factors to guide a district court's discretion under Section 505: (i) "the motivation of the parties;" (ii) "the objective reasonableness of the legal and factual positions advanced;" (iii) "the need in particular circumstances to advance considerations of compensation and deterrence;" and (iv) "any other relevant factor presented." *Rosciszewski v. Arete Assoc.*, 1 F.3d 225, 234 (4th Cir. 1993). Although none of the *Rosciszewski* factors is alone dispositive and all must be taken into account, one factor—the objective reasonableness of claim—is generally the most important factor, and therefore has been given significant weight in this and several other circuits.[10]

The Supreme Court's prescription in *Fogerty* that equitable discretion—rather than a precise rule or formula—should be applied to determine whether attorney's fees and costs should be recovered under Section 505 is plainly vague, and the Fourth Circuit has not eliminated the vagueness with the *Rosciszewski* factors. Indeed, it appears true that, as one wag has stated, what happens in vagueness stays in vagueness.

---

[9] Specifically, the Supreme Court suggested that lower courts use factors such as "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id* at. 534 n.19 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (1986)).

[10] *See Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994); *Matthew Bender & Co., Inc. v. West Pub. Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 121-22 (2d Cir. 2001); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998); *Harris Custom Builders Inc. v. Hoffmeyer*, 140 F.3d 728, 730-31 (7th Cir. 1998); *Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 733 (7th Cir. 1996); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996).

**A.**

Despite the importance of the objective reasonableness factor to the *Rosciszewski* inquiry, the case law does not helpfully elucidate how the objective reasonableness standard should be applied. Only two guideposts are clear: (i) frivolous legal and factual positions are objectively unreasonable,[11] and (ii) a losing position is not necessarily objectively unreasonable.[12] Beyond these guideposts, the meaning of "objective reasonableness" remains a mystery, as it is unclear when a non-frivolous legal or factual position is objectively unreasonable.[13] Put differently, there is a gap between frivolous claims and objectively reasonable claims; yet, in assessing legal and factual positions within that gap, courts are left at sea.

Here, plaintiff's legal and factual positions were not frivolous. Instead, plaintiff's infringement action was based on the plausible, but fatally flawed theory that a plaintiff in an architectural copyright case need not show how individually protected extrinsic elements relate to one another. Although the Fourth Circuit ultimately rejected this theory, there was no precedent directly on point at the time the suit was brought. Rather, plaintiff supported its theory

---

[11] *See Rosciszewski*, 1 F.3d at 234 (noting that in assessing objective reasonableness, "[t]he court may consider, for example, whether the positions advanced by the parties were frivolous, on the one hand, or well-grounded in law and fact, on the other"); *Charles W. Ross, Inc. v. Olsen Fine Home Bldg., LLC*, No. 4:10cv129, 2014 WL 1117909, at *3 (E.D. Va. March 19, 2014) (holding that a plaintiff's position is frivolous where the legal issue "in a copyright action is not a close or complex question.'") (quoting *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp.2d 663, 668 (S.D. N.Y. 2001)).

[12] *See Fogerty*, 510 U.S. 533 (rejecting the "British Rule," which would allow for recovery of attorney's fees for prevailing parties as a matter of course); *Charles W. Ross*, 2014 WL 1117909, at *3 ("A grant of summary judgment does not necessarily mean that the losing party's positions were objectively unreasonable.").

[13] This category clearly exists, as "frivolousness [is] not essential to an award of attorney's fees." *Bond v. Blum*, 317 F.3d 385, 398 (4th Cir. 2003). Indeed, the Supreme Court has rejected frivolousness as a threshold requirement for an attorney's fees award for prevailing defendants. *Fogerty*, 510 U.S. at 520.

with cases from the Eighth Circuit.[14] A close reading of Fourth Circuit precedent ultimately led to the conclusion that plaintiff's theory was contrary to the law of this circuit. But it cannot be said that plaintiff's legal theory at the outset was frivolous. *See Humphreys*, 790 F.3d at 540-42. Moreover, plaintiff had some evidence to support the belief that the Lessard defendants, the Penrose defendants, and the Northwestern defendants had obtained access to the allegedly protected materials. *See Humphreys*, 43 F. Supp.3d 644, 662-64. At all events, in summary, it cannot fairly be said that plaintiff's case was legally and factually frivolous. After all, resolution of the case required 48 pages of judicial opinion.[15]

Yet, the conclusion that plaintiff's case was not frivolous does not end the analysis; it does not follow from that conclusion that plaintiff's case was objectively reasonable. To begin with, as defendants correctly note, plaintiff asserted infringement largely on the basis of ideas, concepts, and individual standard features, all of which the Copyright Act clearly excludes as bases for infringement.[16] Moreover, as defendants also correctly note, the result in this case was far from unexpected, even though the Fourth Circuit had not squarely addressed plaintiff's legal theory prior to this case. Indeed, both the district court and appellate court opinions were guided by well-settled Fourth Circuit precedents that pointed persuasively to the conclusion reached. Moreover, the opinions were further guided by the more recent pronouncements in the *Charles*

---

[14] *See, e.g., Benchmark Homes, Inc. v. Legacy Home Builders, LLC*, No. 8:03CV527, 2006 WL 994566, at *4-5 (D. Neb. Jan. 27, 2006); *Rottlund Co. v. Pinnacle Corp.*, No. 01-1980, 2004 WL 1879983, at *22-24 (D. Minn. Aug. 20, 2004); *CSM Investors, Inc. v. Everest Dev., Ltd.*, 840 F. Supp. 1304, 1311, 1315 (D. Minn. 1994).

[15] The Fourth Circuit opinion was twelve pages, and the district court opinion was 36 pages. *See Humphreys*, 790 F.3d at 532-43; *Humphreys*, 43 F. Supp.3d at 644-679.

[16] Specifically, the Copyright Act states that "in no case does copyright protection for an original work of authorship extend to any idea ... [or] concept ... regardless of the form in which it is described, explained, illustrated, or embodied in such work" and protection for an "architectural work ... does not include individual standard features." 17 U.S.C. § 101, 102(b).

*W. Ross Builder* line of cases, which clarified the role of individual features in extrinsic similarity analysis in architectural copyright cases.[17] Yet another indicium of objective reasonableness is plaintiff's claim of an enormous amount in damages. Although plaintiff's alleged actual damages were $400,000, plaintiff claimed it was entitled to $259,000,000, the present value of the gross revenue stream from the Park Crest Two project over the one-hundred year life of plaintiff's copyright. In so claiming, plaintiff surprisingly insisted that it could recover the large amount from the present defendants and again from each successive purchaser of the property. This damages claim is arguably far from objectively reasonable, if not frivolous.

In the end, the objective reasonableness inquiry in this case is a close question. Plaintiff's legal and factual positions were not frivolous, but they do fall somewhere between frivolousness and objective reasonableness, in some respects closer to the latter and in other respects closer to the former. Thus, on the whole, plaintiff's legal and factual positions were objectively unreasonable. Yet, because plaintiff's legal and factual positions were not frivolous, less weight is accorded to this factor than would otherwise be appropriate. Therefore, analysis of the other *Rosciszewski* factors is important to the Section 505 determination.

**B.**

Even assuming, *arguendo*, that plaintiff's legal and factual positions were objectively reasonable, fee awards are appropriate in this case in light of the other *Rosciszewski* factors. Specifically, "the motivation of the parties" and "the need in particular circumstances to advance considerations of compensation and deterrence" point persuasively toward awarding a fee award.

---

[17] *See, e.g., Charles W. Ross Builder, Inc. v. Fine Home Bldg., LLC*, 496 F. App'x 314, 317-19 (4th Cir. 2012) (explaining that there is no copyright protection for "individual standard features" of architecture and applying a two-part, intrinsic and extrinsic similarity test); *Charles W. Ross Builder, Inc. v. Olson Fine Home Bldg.*, LLC, 977 F. Supp.2d 567, 593-96 (E.D. Va. 2013) (holding that several individual features of an architectural work were not protectable under the extrinsic similarity test).

These two factors are considered together, as they are closely related in this case. *Rosciszewski*, 1 F.3d at 234.

As an initial matter, Section 505 should be applied in a way that generally sets proper incentives for parties litigating infringement disputes. The Supreme Court has made plain that "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *See Fogerty*, 510 U.S. at 527. Indeed, the need for a fee award is greater for prevailing defendants than it is for prevailing plaintiffs, as prevailing defendants obtain no affirmative relief from a victory on the merits. Without the prospect of obtaining attorney's fees, a defendant's costs of vindicating its rights would often, if not always, exceed the private benefit to the defendant, and thus defendants would be more inclined to settle. Moreover, fee awards deter plaintiffs from bringing frivolous and unreasonable infringement suits. In light of these considerations, the Seventh Circuit has adopted a strong presumption in favor of awarding attorney's fees to prevailing defendants under Section 505. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434 (7th Cir. 2004) (Posner, J.) (holding that "[w]hen the prevailing party is the defendant, who by definition receives ... no award, the presumption in favor of awarding fees is very strong" because "without the prospect of such an award, the [defendant] might be forced into a nuisance settlement or deterred altogether from exercising [its] rights"). Other circuits have adopted similar approaches.[18] Although the Fourth Circuit has not adopted a presumption in favor of awarding a fee award to prevailing defendants, it has noted, in a case involving a prevailing defendant, that "the failure of a district court to

---

[18] *See also Hogan Sys., Inc. v. Cybersource Int'l, Inc.* 158 F.3d 319, 325 (5th Cir. 1998) (holding that attorney's fees should be "routinely awarded" in the context of a prevailing defendant); *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (holding that a fee award "should be awarded routinely" in the context of a prevailing defendant).

award attorney's fees and costs ... will, except under the most unusual circumstances, amount to an abuse of discretion." *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994).

In addition to setting the proper incentives in all cases, particular compensation and deterrence interests in the present case point persuasively to a fee award. There is some indication that plaintiff brought this lawsuit in an effort to extract money through a settlement rather than protecting its purported copyright;[19] these indicators relate both to "the motivation of the parties" and to the "need in particular circumstances to advance considerations of compensation and deterrence," *Rosciszewski*, 1 F.3d at 234. Specifically, plaintiff aggressively pursued an unusually large damages claim. As described above, although its lost profits were approximately $400,000, plaintiff sought $259,000,000. Any lawyer familiar with the cost-benefit analysis used when assessing a potential settlement knows that a large damages claim—like the figure sought by plaintiff—skews the analysis heavily in favor of settlement, even when the opposing party has a relatively high likelihood of success on the merits.[20] Moreover, after bringing the lawsuit in 2013, plaintiff added defendants, presumably for additional deep pockets.

In essence, the second and third *Rosciszewski* factors point persuasively to fee awards for the prevailing defendants in this case. Such awards are needed to set proper incentives for defendants with meritorious defenses and to compensate defendants for the legal costs incurred

---

[19] *See Assessment Techs. of WI, LLC*, 350 F.3d at 647 (finding that the use of a dubious copyright infringement suit "hoping to force a settlement" is "an abuse of process").

[20] Defendants also point to seven other copyright infringement suits filed by plaintiff as evidence that plaintiff routinely harasses competitors with copyright infringement suits once it loses a bid. But this argument is unpersuasive. The only proof defendants offer is a Pacer-generated list of copyright cases involving Humphreys. This thin evidence demonstrates nothing with respect to the merits of these additional cases, let alone the motivation for bringing them. Thus, without more, these other cases are not evidence of bad motive here. *See Malibu Media, LLC v. Baiazid*, No. 1:14-cv-1178, 2015 WL 6759448, at *4 (E.D. Va. Nov. 5, 2015) (rejecting a similar argument).

in plaintiff's efforts to drive up the costs of litigation by seeking unusually high damages and naming a number of parties. Thus, fee awards of some amount are appropriate for all three groups of defendants.

## V.

Because fee awards of some amount are appropriate, the next question to address is whether the fee awards claimed by defendants are reasonable in the circumstances. They are not. Some hourly rates are excessive and the descriptions of many tasks are deficient, as many time entries lump multiple tasks together and contain vague task descriptions.

The well-settled and familiar lodestar methodology is the important starting point in a fee claim evaluation. As the Supreme Court has noted, "the lodestar figure has, as its name suggests, become the guiding light." *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002).[21] The Fourth Circuit has prescribed a procedure for the lodestar methodology. *Grissom v. Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). District courts are to (i) calculate the lodestar figure, which is determined by multiplying the "reasonable hourly rate" by the "hours reasonably expended," in light of the factors enumerated in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[22] (ii) subtract fees for hours

---

[21] In a civil rights fee-shifting case, the Supreme Court has recently noted that the lodestar figure is presumptively reasonable once calculated in a particular case and may be adjusted only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). Although the Supreme Court used the adjective "rare" to describe the circumstances in which the lodestar figure does not adequately determine whether a fee claim is reasonable, it is arguably fair to say that district courts see far more fee claims than does the Supreme Court and that most district courts would not agree that those circumstances can be accurately characterized as "rare." Indeed, what is routine to privates in the trenches is rare to a general behind a desk.

[22] These factors are: (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of

spent on unsuccessful claims unrelated to successful ones, and (iii) award some percentage of the remaining amount, depending on the degree of success achieved. *Grissom*, 549 F.3d at 320-21. When calculating the lodestar figure in a case in which not all claims were successful, a district court must attempt to determine how many hours were reasonably expended litigating the successful claims, as well as those hours reasonably expended litigating any unsuccessful claims that were nonetheless related to a successful claim. This determination is appropriately guided by the *Johnson/Barber* factors. Although the lodestar calculation is the starting point, it is not the end of the analysis. Once calculated, a district court must consider whether the lodestar figure reflects all the *Johnson/Barber* factors, and a court may adjust the lodestar figure based on the *Johnson/Barber* factors that the lodestar figure does not adequately take into account. Of course, any adjustment to the lodestar figure must be supported by an "objective and reviewable basis." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010).

Lodestar analysis begins by assessing the reasonableness of the hourly rates claimed in the fee petition. The prevailing market rate of attorney's fees must be determined based on the "relevant community where the district court sits." *Grissom*, 549 F.3d at 321. Accordingly, a defendant must support the rates claimed by producing "satisfactory specific evidence of the prevailing market rates in the relevant community." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (internal quotation marks and citations omitted). Such evidence consists of "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* at 245.

---

other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

Lodestar analysis next properly examines defendants' fee petition to determine the appropriate number of attorney hours to multiply by the hourly rates. Time entries can create barriers to reasonableness review if they suffer from lumping or vague task descriptions. As one court in this district has recently noted, "[e]ntries that lump multiple tasks together under a single time entry present a significant barrier to a reasonableness review" because "lumping 'simply does not provide the court with a sufficient breakdown to meet [the] burden to support [a] fee request in specific instances'" *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, No. 1:14-cv-30, 2015 WL 5123302, at *11 (E.D. Va. Aug. 28, 2015) (quoting *Project Vote/Voting for Am., Inc. v. Long,* 887 F. Supp.2d 704, 716 (E.D. Va. 2012)). Vague task descriptions also impede reasonableness review because "[e]ntries that do not disclose the nature, volume, or relevance of the documents frustrate any attempt to assess the reasonableness of the time devoted to that task." *Id.*

Where time entries suffer from inadequate documentation, such as lumping and vague task descriptions, a court must exercise sound judgment based on knowledge of the case and litigation experience to reduce the number of hours by an appropriate percentage. When "faced with excessively vague or inadequate task descriptions in fee claims," courts "have reduced fee claims by percentages ranging from 20% to 90%." *Route Triple Seven,* 2015 WL 5123302, at *11.[23] And "courts confronted with time records infected with lumping have reduced fee claims

---

[23] *See, e.g., Bishop v. Colvin,* No. RDB-13-519, 2014 WL 2093950, at *3 (D. Md. 2014) ("Because of the imprecise tracking of hours and tasks throughout the itemized statement of fees ... I recommend reducing the total hours allowed by twenty percent."); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't. of Justice,* 825 F. Supp.2d 226, 230 (D. D.C. 2011) (reducing the hours claimed by 37.5% to account for "inaccuracies and overbilling that may have occurred as a result of ... unacceptable timekeeping habits."); *Local 32B–32J, Serv. Emp. Int'l Union, AFL–CIO, et al. v. Port Authority of N.Y. and N.J.,* 180 F.R.D. 251, 253 (S.D. N.Y. 1998) ("the vague descriptions contained in many of the attorney time records" justified a "20% reduction in the amount" requested); *Amato v. City of Saratoga Springs,* 991 F.

by percentages ranging from 10% to 20%." *Id.*[24] In short, "where time records include lumping and vague task descriptions, courts must make a judgment in reducing the relevant number of hours forming the basis for a fee award." *Id.*

## A. The Lessard defendants

The Lessard defendants seek $1,403,121.60 in attorney's fees for 2,777.45 hours worked. Appropriately, the Lessard defendants do not seek attorney's fees for hours billed in connection with its unsuccessful counterclaim. Nonetheless, the Lessard defendants fee claim is excessive for several reasons.

The Lessard defendants are represented by Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP ("Finnegan"). The hourly rates of the attorneys and litigation support staff that worked on this case are as follows:

| Timekeeper | Position | 2013 Rate | 2014 Rate | 2015 Rate |
|---|---|---|---|---|
| Christopher P. Foley | Partner | $712.00 | $716.00 | $752.00 |
| Patrick J. Coyne | Partner | $692.00 | $728.00 | $764.00 |
| Donald O. Burley | Partner | — | — | $832.00 |
| Margaret Esquenet | Partner | $512.00 | — | — |
| Jay Westermeier | Of Counsel | $528.00 | $544.00 | — |
| Hala Mourad | Associate | $352.00 | $396.00 | — |
| Brian Westley | Associate | $292.00 | — | — |

---

Supp. 62, 66 (N.D. N.Y. 1998) ("grossly inadequate specificity in the proffered billing records" combined with an unreasonably high request for hours resulted in a reduction of the number of hours claimed by 90%).

[24] *See, e.g, Elderberry of Weber City, LLC v. Living Centers–Southeast, Inc.*, No. 6:12-cv-00052, 2014 WL 3900389, at *4 (W.D. Va. 2014) ("When confronted with block billing, courts often reduce the fee award by a fixed percentage, striking a balance between the troubling lack of specificity block billing presents and the unfairness of denying an otherwise-properly-granted fee award altogether."); *Project Vote*, 887 F. Supp.2d at 716 (applying "a fixed percentage reduction of 10 percent to the fee award" due to lumping).

| Karthik Kumar | Associate | — | $340.00 | $388.00 |
|---|---|---|---|---|
| Tom Carrol | Legal Assistant | $212.00 | $220.00 | — |
| Jacob Mersing | Legal Assistant | $212.00 | $220.00 | — |
| Jeremy Miller | Legal Assistant | — | $264.00 | $272.00 |
| Pamela A. Neal | Legal Assistant | $152.00 | — | — |
| Catherine Sandler | Legal Assistant | — | — | $228.00 |
| Kenny Pegram | Information Technologist | $216.00 | $224.00 | — |
| Faith Ottenhoff | Research Librarian | $196.00 | — | — |
| Bianca Hamilton | Research Librarian | — | $152.00 | — |

The Lessard defendants present several declarations to bolster the claim that these hourly rates are reasonable. *See* Coyne Decl.; Wilbur Decl.; Cranston Decl. The Coyne Declaration, for example, cites the American Intellectual Property Law Association Report of Economic Survey ("AIPLA Report"), which reports, *inter alia*, data collected from the prior calendar year about the hourly billing rates and associated expenses for intellectual property work. The most recent edition of the AIPLA Report provides data for 2014 hourly billing rates. The Lessard defendants point to data from a national survey for billing rates for firms with more than 150 full time intellectual property lawyers, which states the median hourly rates as: (i) $795/hour for partners; (ii) $610/hour for of counsel, and (iii) $425/hour for associates. AIPLA Report, at 25, 36, 54. But contrary to the Lessard defendants' suggestion, a national survey does not represent the "relevant community," as required by *Robinson*. 560 F.3d at 244. The relevant community here is Northern Virginia. Unfortunately, the AIPLA Report does not provide data specific to that portion of the Commonwealth, but it does provide the median hourly rates for attorneys in Washington, D.C.—a closer, albeit loose, fit. The Washington, D.C. median rates are: (i) $485/hour for partners, (ii) $473/hour for of counsel, and (iii) $350/hour for associates. AIPLA Report, at 25, 36, 54. These medians are significantly lower than the national medians, but they

still exceed the hourly rates that have been awarded in recent cases in this district. In cases similar in nature, difficulty, and complexity to the present case, courts in this district have recognized rates up to $420/hour for partners, $275/hour for associates, and $120/hour for litigation support staff.[25] The declarations submitted by the Lessard defendants "provide no persuasive reason"—and certainly not "'extensive evidence'"—"to countenance an award based on higher rates than these." *Route Triple Seven Ltd. P'ship*, 2015 WL 5123302, at *10 (quoting *Jones*, 2014 WL 2993443 at *7)). The rates charged by Finnegan's partners and of counsel attorneys greatly exceed $420/hour; the rates for Finnegan's associates greatly exceed $270/hour, and the rates for Finnegan's litigation support staff greatly exceed $120/hour.[26] In fact, one Finnegan partner's hourly rate is nearly double the $420/hour rate recently awarded in a similar case. *See Route Triple Seven Ltd. P'ship*, 2015 WL 5123302, at *10.

---

[25] *See Route Triple Seven Ltd. P'ship.*, 2015 WL 5123302, at *10 (rate for partners was reduced to $420/hour, rate for second-year associate was reduced to $200/hour, and rate for paralegal was reduced to $120/hour); *Jones v. Southpeak Interactive Corp. of Del.*, No. 3:12cv443, 2014 WL 2993443, at *7 (E.D. Va. July 2, 2014) (reasonable rate for experienced counsel was $420/hour based on extensive evidence submitted regarding prevailing market rates in the locality); *Shammas v. Focarino*, 990 F. Supp.2d 587, 593 (E.D. Va. 2014) (reasonable rate for paralegal was $118.90/hour); *In re Outsidewall Tire Litigation*, 52 F. Supp. 3d 777, 788 (E.D. Va. 2014) (reasonable rate for partners was $400/hour and reasonable rate for associates was $275/hour); *Auto. Fin. Corp. v. EEE Auto Sales, Inc.*, No. 1:10cv1407, 2011 WL 3422648, at *8 (E.D. Va. Aug. 3, 2011) (reasonable market rates in Northern Virginia were $335–380/hour for partners and $250/hour for associates); *Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, No. 2:07cv530, 2009 WL 4841017, at *7 (E.D. Va. Oct. 23, 2009) (rate of $350/hour was reasonable for law partner with 15 years' experience, rate $200/hour was reasonable for junior associate, and rate of $100/hour was reasonable for paralegal); *Alford v. Martin & Gass, Inc.*, No. 1:08cv595, 2009 WL 2447936, at *4 (E.D. Va. Aug. 3, 2009) ($350/hour was reasonable rate for experienced counsel and $170/hour was reasonable rate for associate with 1-2 years' experience).

[26] It is instructive to contrast Finnegan's rates with the rates charged by the Northern Virginia lawyers in this case. The Northwestern defendants' local counsel, Craig Reilly, charges $350/hour, and the Penrose defendants' attorneys charge $375-390/hour. The Lessard defendants have provided no evidence for why the services provided by their Washington, D.C. attorneys should be valued so much higher than the services provided by their Virginia co-counsel.

In addition to the unreasonably high hourly rates, the Lessard defendants' documentation is inadequate for several reasons. The adjusted timesheet submitted by the Lessard defendants' counsel includes more than 400 lumped entries,[27] and is replete with vague task descriptions.[28] These defects prevent "any accurate or confident assessment of the reasonableness of the time claimed … ." *In re Outsidewall Tire Lit.*, 52 F. Supp.3d. 777, 780 (E.D. Va. 2014). In addition, the Lessard defendants do not adequately discount the time spent on their failed counterclaim. The adjusted timesheet includes hundreds of hours that appear to relate to the failed counterclaim. The Lessard defendants, in most instances, discount these hours by 10%, assuming this sufficiently accounts for the time spent on the counterclaim. But the Lessard defendants provide no rationale for their percentage of reduction. In the end, the Lessard defendants' vague entries do not allow the Court to evaluate "the time expended" and "the nature and need for the service" with respect to the unsuccessful counterclaim. *E.E.O.C. v. Nutri/System, Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988).[29]

---

[27] *See* Pl.'s Ex. L. Two examples of lumped entries are: (i) "Conduct legal research regarding tortious interference with contract, tortious interference with business expectancy, and defamation; reviewed and analyzed cases; evaluated viability of same as counterclaims" for 5.8 hours, and (ii) "New case setup task, docketing, mailing lists, prepare service lists for pleadings, follow up on pro hac vice application of Coyne, correct and file erroneous Cert of Service from earlier filing" for 5.2 hours. *Id.*

[28] The first several pages of the Lessard defendants' adjusted timesheet includes the following examples: "Revise discovery requests," "Revise answer," "Fact research," "update internal logs, dockets, etc.," review interrogatory answers," "review docket activity," consider complaint," and "further consider complaint." Lessard Defs. Supp. Br. at 95, 100, 102. These are similar to the vague task descriptions identified by a court in this district in a recent case, which included "document review," "work on discovery," and "review electronically stored litigation." *Outsidewall Tire Lit.*, 52 F. Supp.3d at 780.

[29] Plaintiff further contends that the Lessard defendants may not recover fees for work it did on appeal, arguing that fees are recoverable only under Rule 39 of the Federal Rules of Appellate Procedure. But plaintiff's argument is misguided. A district court in the Fourth Circuit may award fees for services rendered on appeal so long as the party requesting fees has complied with

In light of the Lessard defendants' unreasonable hourly rates and inadequate documentation, a significant reduction to their fee award is proper. An initial 25% reduction is appropriate to account for the excessive hourly rates; this brings the amount to $1,052,341.20.[30] From this amount, an additional 20% reduction is appropriate to account for (i) the many flaws in the Lessard defendants' documentation and (ii) the fact that although plaintiff's legal and factual positions in the underlying dispute were objectively unreasonable, they were clearly not frivolous, *see Zomoyski v. Fifty-Six Hope Road Music Ltd., Inc.*, 767 F. Supp.2d 218, 224 (D. Mass. 2011) (reducing a "fee request by ten percent to account for the fact that, while objectively unreasonable, [the losing party's] position was not frivolous"). The second reduction brings the total to $841,872.96. Accordingly, the Lessard defendants are properly awarded a fee award in this amount.

### B. The Penrose defendants

The Penrose defendants claim $990,995.00 in attorney's fees for 2,707.8 hours worked. Appropriately, this amount does not include recovery of (i) $21,317 in attorney's fees associated with coordination among the other defendants and (ii) $11,812 in fees associated with calendaring, docketing, and file management. Nonetheless, the Penrose defendants fee claim is unreasonable in certain respects.

---

the relevant procedures and deadlines in the case. *See Maddrix v. Dize*, 153 F.2d 274, 276 (4th Cir. 1946) (holding that awarding fees for appellate work was within the discretion of the district court). This is reflected by the Fourth Circuit's Local Rule 39(c), which expressly provides that "all costs are recoverable in the district court after the issuance of the mandate." Fourth Circuit Local Rule 39(c).

[30] This is a conservative approximation based on the difference between the rates claimed by the Lessard defendants and the rates that have been awarded in recent cases of a similar nature and complexity. *See supra* n.25. A 25% reduction brings the rates sought here close to the range of rates awarded in those cases.

The Penrose defendants are represented by Cloudigy Law, PLLC. The hourly rates of the attorneys and litigation support staff that worked on this case are as follows:

(i) Antigone Payton, founder and CEO of Cloudigy and an attorney with 13 years' experience, billed at $390/hour;

(ii) attorneys Kandis M. Koustenis and Jennifer S. Atkins, who have 24 years' and 13 years' experience respectively, billed at $375/hour;

(iii) the legal assistants billed at $175/hour; and

(iv) the legal researcher billed at $100/hour.

These hourly rates are reasonable, as they are at or below the hourly rates awarded in several recent cases in this district,[31] with one exception: The hourly rate for the Penrose defendants' legal assistants is higher than what has previously been awarded in this district. *See Route Triple Seven Ltd. P'ship*, 2015 WL 5123302, at *10 (holding that $120/hour was a reasonable rate for litigation support staff). On the whole, however, the rates claimed by the Penrose defendants are reasonable. Indeed, plaintiff does not argue the contrary.

Although the rates are generally reasonable, the time billed is inadequately documented. As plaintiff correctly notes, 66 of counsel's time entries suffer from lumping,[32] and some time entries are identical double entries for the same day, resulting in an excess of 13.2 hours.[33] In addition, some of the fees claimed by the Penrose defendants are unrecoverable. Specifically, the Penrose defendants seek to recover approximately 15 hours for work associated with a

---

[31] *See supra* n.25.

[32] Examples include: (1) for 8.5 hours, "Perform factual and document review after client meeting in preparation for substantial factual addition to counterclaims; draft and revise counterclaims; prepare exhibits for counterclaims; discuss drafts with Messrs. Kollevoll and McDonald" (2) for 5.1 hours, "review case materials and prepare damages and fee spreadsheet for J. Fausey; analyze memorandum re: Rule 68 Offer options and prepare for conference call re: same." *See* Pl.'s Ex. P.

[33] *See* Pl.'s Ex. Q.

deposition that was taken in connection with the Lessard defendants' unsuccessful counterclaim.[34] In total, 242.8 hours are affected by these flaws in documentation.[35]

Accordingly, a reduction to the Penrose defendants' fee petition is proper. Although the Penrose defendants generally seek reasonable hourly rates, their documentation is inadequate and, in some instances, duplicative; hence, a reduction of 20% is appropriate. This figure takes into account (i) the time entries affected by inadequate or duplicative documentation, (ii) the unreasonable rate claimed for legal assistant work, and (iii) the fact that although plaintiff's legal and factual positions in the underlying dispute were objectively unreasonable, they were clearly not frivolous, *See Zomoyski*, 767 F. Supp.2d at 224. Accordingly, the Penrose defendants' total attorney's fees award in this case is $792,796.00.

### C. The Northwestern defendants

The Northwestern defendants claim $246,775.00 in attorney's fees for 582.7 hours of work. As with the other defendants, a reduction is appropriate because the Northwestern defendants' fee claim is unreasonable in certain respects.

The Northwestern defendants are represented by London & Mead and Craig C. Reilly, and the hourly rates of the attorneys and litigation support staff that worked on this case are as follows:

(i) partner Christopher B. Mead billed at $600/hour;

(ii) attorney Craig C. Reilly billed at $350/hour;

(iii) associate Amelia Moorstein billed at $300/hour;

(iv) of counsel Deborah Bradley Clements billed at $500/hour; and

---

[34] *See* Pl.'s Ex. L

[35] Plaintiff also contends that the fees claimed for work on appeal are unrecoverable, but this argument fails for the reasons already stated. *See supra* n.29.

(v) paralegal madeleine Regan billed at $125/hour.

With the exception of Reilly, all of these hourly rates are above the rates recently awarded in similar cases in this district.[36] In support of these higher rates, the Northwestern defendants submit a Declaration of Christopher Mead stating that the fees sought are the typical rates charged by London & Mead lawyers. *See* Mead Decl. ¶¶ 9-12. This conclusory statement, without more, does not "provide [a] persuasive reason to countenance an award based on higher rates than" those recently awarded in similar cases in this district. *Route Triple Seven Ltd. P'ship*, 2015 WL 5123302, at *10. In addition, as plaintiff correctly notes, the time entries submitted by the Northwestern defendants' counsel include 33 instances of lumped entries, which total in 84 hours of billed time.[37] These lumped entries do not provide "'a sufficient breakdown to meet [the] burden to support [a] fee request in specific instances'" *Route Triple Seven Ltd. P'ship*, 2015 WL 5123302, at *11 (quoting *Project Vote/Voting for Am., Inc.*, 887 F.Supp.2d at 716). Thus, the Northwestern defendants' documentation is inadequate.

In the end, a reduction to the Northwestern defendants' fee petition is proper in order to account for the unreasonable hourly rates claimed and the lumped time entries. An initial 15%

---

[36] *See* supra, n.25.

[37] Examples include: (i) "Humphreys: emails w P Coyne re Joint representation issues; teleconference call P Coyne & Penrose's counsel re array of issues; ememos re Penrose meeting; tc P Coyne re Penrose call & re responsive pleadings; tc MW re calls & related issues; emails w client & P Coyne re penrose meeting; emails from P Coyne re client meeting; review amended complaint from plaintiff; emails re amended complaint & template answer; tc P Coyne re potential unavailability of motion to dismiss CJL; review M Heatwole spreadsheet re coverage issue" for 4.5 hours and (ii) "Humphreys: emails & tc w S Weinstock at Travelers re issues related lawsuit; tc's & phone calls with both sets of opposing counsel re acceptance of service & other issues; emails w clients re variety of issues re status & lawsuit; beginning drafting of answers" for 6.0 hours. Pl.'s Ex. M.

reduction is appropriate for the excessive hourly rates, bringing the fee award to $209,758.75.[38] From that amount, an additional 20% reduction is appropriate to account for (i) the lumped entries and (ii) the fact that although plaintiff's legal and factual positions in the underlying dispute were arguably objectively unreasonable, they were clearly not frivolous, *see Zomoyski*, 767 F. Supp.2d at 224. The second reduction brings the total to $167,807.00. Accordingly, the Northwestern defendants are properly awarded a fee award in this amount.

## VI.

Defendants also seek to recover taxable costs. Specifically, the Lessard defendants seek taxable costs in the amount of $36,937.00; the Penrose defendants seek taxable costs in the amount of $36,450.51; and the Northwestern defendants seek taxable costs in the amount of $7,093.20.

The Penrose defendants and the Northwestern defendants are entitled to all taxable costs they seek, as plaintiff does not dispute that these costs are recoverable. But as plaintiff correctly notes, the Lessard defendants' taxable costs must be reduced in two respects. First, the Lessard defendants may not recover the $3,825.25 it incurred by ordering a copy of Robert Swedroe's deposition transcript because that deposition was related to the Lessard defendants' unsuccessful counterclaim. Second, although the Lessard defendants may recover transcript fees necessary to litigation, they may not recover for additional fees incurred for expedited transcripts without proof that expedited delivery was necessary to the litigation. *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, No. 1:07-cv-491, 2009 WL 3423848, at *9 (E.D. Va. Oct. 16, 2009). Plaintiff contests fifteen deposition transcripts for a total of nine witnesses (including Swedroe)

---

[38] As with the Lessard defendants, this is a conservative approximation based on the difference between the rates claimed by the Northwestern defendants and the rates that have been awarded in recent cases of a similar nature and complexity. *See supra* n.25. A 15% reduction brings the rates sought here close to the range of rates awarded in those cases.

on this basis. Plaintiff objects only to the portion of transcript fees associated with expedited delivery, but it is impossible to determine what portion of the claimed transcript fees relate to this unnecessary service because, unlike the Penrose defendants, the Lessard defendants did not provide invoices for their transcript fees. Without an evidentiary basis for the necessary costs incurred for transcripts, the Lessard defendants cannot recovery any portion of these fees. As a result of these reductions, the Lessard defendants are entitled to recover only $2,563.55 in taxable costs.

## VII.

Defendants also seek non-taxable costs.[39] The Lessard defendants seek to recover $426,593.91 in non-taxable costs. The Penrose defendants seek to recover $107,841.85 in non-taxable costs. The Northwestern defendants apparently incurred $20,357.42 in non-taxable costs, but as plaintiff correctly notes, they have not offered any argument or authority for the recovery of these costs, and therefore may not recover them. *See Hensley*, 461 U.S. at 437 (holding that the fee applicant bears the burden of establishing its entitlement to a fee award).[40]

Section 505 allows a court to award "full costs;" it is unclear, however, what "full costs" means. 17 U.S.C. § 505. Analysis of this question properly begins with *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (holding that costs recoverable under Fed. R. Civ.

---

[39] Rule 54(d)(2)(A) permits a request for "related nontaxable expenses" to be made together with a motion for attorney's fees. Fed R. Civ. P. 54(d)(2)(A).

[40] Specifically, the records produced by the Northwestern defendants indicate that they have incurred $20,357.42 in non-taxable costs, but the Northwestern defendants make no argument that that these costs are recoverable under Section 505. Mead Decl., Ex. B. Moreover, even if the Lessard defendants had sought recovery of these costs, an award would be inappropriate, as "full costs" in Section 505 is limited to the costs recoverable under 28 U.S.C. §§ 1821 and 1920. *See Pinkham v. Mary Ellen Enters, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (holding that the scope of Section 505 costs is equal to the scope of costs recoverable under Sections 1821 and 1920); *Artisan Contractors Ass'n. of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039-40 (11th Cir. 2001) (same).

P. 54(d) are limited to those set forth in 28 U.S.C. §§ 1821 and 1920). Although *Crawford Fitting* was an employment discrimination case rather than a copyright infringement case, the Supreme Court provided a general framework for considering whether a statute provides for the recovery of costs that exceed the scope of costs recoverable under Sections 1821 and 1920. Specifically, the Supreme Court made clear that "[a]ny argument that a federal court is empowered to exceed the limitations explicitly set out in §§ 1920 and 1821 without plain evidence of congressional intent to supersede those sections ignores our longstanding practice of construing statutes *in pari materia*"[41] because "'[w]here there is no clear intention otherwise, a specific statue will not be controlled or nullified by a general one regardless of the prior of enactment.'" 482 U.S. at 445 (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)).

With respect to Section 505, there is a circuit split on whether or not "full costs" encompasses more than the costs recoverable pursuant to Sections 1821 and 1920. 17 U.S.C. § 505. Courts on both sides of the circuit split agree that *Crawford Fitting* requires "careful[] insepect[ion of] § 505 for clear evidence of congressional intent" before concluding that "non-taxable costs should be available." *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005) (holding that the scope of Section 505 costs is broader than the scope of Section 1920 costs); *see also Pinkham v. Mary Ellen Enters, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (holding that the scope of Section 505 costs is equal to the scope of costs recoverable under Sections 1821 and 1920). But courts disagree as to whether  the term "full" is clear evidence that non-taxable costs are available under Section 505. The Eighth and Eleventh Circuits have held that the term "full" is not clear evidence that Congress intended the scope of

---

[41] Statutes that are "in pari materia" are "on the same subject" and "may be construed together." Black's Law Dictionary 911 (10th ed. 2009).

recoverable costs pursuant to Section 505 to be broader than the scope of recoverable costs pursuant to Sections 1821 and 1920. *See Pinkham*, 84 F.3d at 295; *Artisan Contractors Ass'n. of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039-40 (11th Cir. 2001). The Seventh and Ninth Circuits, in contrast, have held that "full" is clear evidence that the scope of recoverable costs pursuant to Section 505 is broader than the scope of recoverable costs pursuant to Sections 1821 and 1920. *See Twentieth Century Fox Film*, 429 F.3d at 885; *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 458 (7th Cir. 2001). The Fourth Circuit has not addressed the question, but a district court in this Circuit has embraced the narrow position adopted by the Eighth and Eleventh Circuits. *See Arista Records, LLC v. Gaines*, 635 F. Supp.2d 414, 418-19 (E.D. N.C. 2009).

The Eight and Eleventh Circuit's narrow interpretation of "full costs" in Section 505—embodying only the scope of recoverable costs under Sections 1821 and 1920—is persuasive. The phrase "full costs" is, at a minimum, ambiguous as to whether it includes costs beyond the scope of those general bill of costs statutes. Such ambiguity is not evidence of a "clear intention" by Congress to allow recovery of costs beyond those available under Section 1920. *See Crawford Fitting*, 82 U.S. at 445.

Defendants rely on the Ninth Circuit's reasoning in support of the broader interpretation. The Ninth Circuit determined that there was evidence of a broader scope on the ground that "[c]onstruing § 505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word 'full' out of the statute," and therefore such a construction would "violate the long standing principle ... that 'statutes should not be construed to make surplusage of any provision.'" *Twentieth Century Fox Film*, 429 F.3d at 885 (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir 1996)). But the Ninth Circuit's reasoning

29

presupposes a false dichotomy—that the term "full" must mean either (i) beyond the scope of Sections 1821 and 1920 or (ii) nothing at all. Contrary to the Ninth Circuit's presupposition, the term "full" has another possible, non-superfluous meaning; it could refer to the degree of costs recoverable under §§ 1821 and 1920. Put differently, without the term "full," Section 505 would be ambiguous as to whether "costs" is as broad in scope as the costs recoverable under the general bill of costs statutes. Importantly, the meaning of "full" need not be definitively determined in the present case. What matters here is that the term is ambiguous insofar as there are at least two reasonable, non-superfluous readings of "full," and therefore that term alone is not clear evidence of congressional intent that the scope of Section 505 recoverable costs is broader than that of Sections 1821 and 1920. Thus, the general bill of costs statutes limit the additional costs defendants seek under Section 505.

Here, defendants seek additional costs that are not recoverable pursuant to Sections 1821 and 1920, and hence are not recoverable pursuant to Section 505. Specifically, defendants seek recovery costs for (i) electronically stored information ("ESI") fees and outside duplicating costs, (ii) expert witness fees, (iii) outside counsel, (iv) legal research and investigation, and (v) travel expenses; (vi) deposition videography; and (vii) other costs. None of these costs is recoverable. Each category of costs is addressed in turn.

The Lessard defendants seek to recover electronic discovery vendor fees and outside duplication costs in the amount of $114,126.94, which includes $110,448.40 in costs for electronic discovery and $3,678.54 in cost for the production of various large-format architectural plans and other documents. *See* Coyne Decl. ¶¶ 16-19. The Penrose defendants seek to recover $$35,927.50 for electronic discovery vendor fees and $687.87 for electronic document and data fees. Peyton Decl. ¶¶ 21-48. As plaintiff correctly argues, however, the ESI costs

claimed by both sets of defendants are outside the scope of Section 1920. *See Country Vintner v. Gallo*, 718 F.3d 249, 260-61(4th Cir. 2013) (holding that the expense of collecting and organizing documents prior to production were not recoverable under Section 1920 because "'the presumption is that the responding party must bear the expense of complying with discovery requests'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)). With respect to outside duplication costs, a party may recover "the costs of making copies of any materials where copies are *necessarily* obtained for use in this case." 28 U.S.C. § 1920 (emphasis added). Here, the Lessard defendants have not demonstrated that any of the outside duplication costs it requests were *necessary*, and therefore may not recover those costs. In sum, both sets of defendants are not entitled to recover any ESI and outside duplication costs.

In addition, the Lessard defendants seek $83,830.84 in expert fees, and the Penrose defendants seek to recover $64,218.43 in expert fees. Coyne Decl. ¶¶ 22-26; Peyton Decl. ¶¶ 49-55. As plaintiff correctly notes, defendants are "not entitled to recoup expert witness fees in excess of those permitted under 28 U.S.C. §§ 1821[] and 1920." *Silicon Knights, Inc. v. Epic Games, Inc.* 917 F.Supp.2d 503, 524 (E.D. N.C. 2012). All of the expert fees requested by defendants involve preparation and research, which are not recoverable under Sections 1821 and 1920. Thus, defendants are not entitled to recover expert fees.

The Lessard defendants also seek costs in the amount of $82,375.23 for the outside counsel they retained to oppose plaintiff's subpoenas to the Lessard defendants' trial counsel. As plaintiff correctly notes, these so-called "costs" are not recoverable under Section 1920. Indeed, they are properly characterized as attorney's fees, and hence any recovery of these fees would be subject to the requirements of lodestar proof. Because the Lessard defendants have not provided

31

any evidence that the rates of these lawyers are reasonable, the Lessard defendants are not entitled to the expenses it incurred by retaining outside counsel. *See Robinson*, 560 F.3d at 244.

The Lessard defendants also seek to recover costs of travel expenses incurred by its counsel when attending various depositions in the amount of $4,188.70, and the Penrose defendants seek $2,219.33 in travel fees incurred in the course of attending depositions. Not only are these costs unrecoverable under Section 1920, a portion of the travel expenses relate to the Swedroe deposition, which was taken in connection with the Lessard defendants' counterclaim. Thus, defendants may not recover travel expenses.

The Penrose defendants further seek to recover $2,190 for the costs incurred for deposition videography. Peyton Decl. ¶ 70-72. Deposition costs are taxable under § 1920, but costs associated with a deposition that are "merely incurred for convenience, to aid in thorough preparation," are not recoverable. *E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 620-21 (11th Cir. 2000). As plaintiff correctly notes, the Penrose defendants make no showing of why videography of the depositions was necessary rather than simply convenient. Thus, the Penrose defendants are not entitled to recover these costs.[42]

The Lessard defendants also seek to recover $5,330.76 for legal research fees. Coyne Decl. ¶ 29-33.[43] The Penrose defendants seek to recover: (i) $1,483.95 in legal research fees,

---

[42] *Cf. Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, No. 1:07-cv-491, 2009 WL 3423848, at *9 (E.D. Va. Oct. 16, 2009) (holding that a party could not recover fees for expedited transcripts without showing why expedited transcripts were necessary to the litigation).

[43] The sum of the non-taxable costs sought by the Lessard defendants mentioned so far is $289,852.47. This is significantly less than the $426,593.91 in non-taxable costs that the Lessard defendants claim. But the Lessard defendants have not identified the costs that would make up the difference between these two figures and have not provided any evidence of additional costs. Thus, the Lessard defendants have not provided any basis for recovering them pursuant to Section 1920, and therefore are not entitled to the remaining $136,741.44 it claims as non-

Peyton Decl. ¶ 73; (ii) $570 in process server fees, *id.* ¶ 17; and (iii) $544.97 in courier service fees, *id.* ¶ 56. These costs are not recoverable because defendants have provided no basis for recovery under Section 1920.

In sum, defendants may not recover any of the non-taxable costs they seek under Section 505.

## VIII.

For the reasons stated here, it is appropriate that: (i) the Lessard defendants be awarded $841,872.96 in attorney's fees and $2,563.55 in taxable costs; (ii) the Penrose defendants be awarded $792,796.00 in attorney's fees and $36,450.51 in taxable costs; and (iii) the Northwestern defendants be awarded $167,807.00 in attorney's fees and $7,093.20 in taxable costs.

A final comment is worth noting. Although the reductions in this case have been substantial, the reasonableness of the fees finally awarded is apparent from another perspective. Large law firms often task far more attorneys than is necessary in a lawsuit like this. Indeed, in this case, a litigation team of sixteen individuals worked on behalf of one group of defendants. With such a large litigation team, the number of hours billed grows rapidly. If multiple lawyers assigned to the case all read a memorandum or meet to confer about the status of the case, each lawyer bills time and there is a risk of duplicative effort. Put another way, this case could have been fully and fairly litigated with each party devoting no more than two experienced, competent lawyers to the case. Indeed, many years ago, before the rise of large law firms, this was the norm. Had that occurred in this case, it seems likely that the matter would have been fully and

---

taxable costs. *See Hensley*, 461 U.S. at 437 (holding that the fee applicant bears the burden of establishing its entitlement to a fee award).

fairly litigated, resulting in the same outcome but with legal fees significantly lower than those sought here.

An appropriate order will issue.

Alexandria, Virginia
November 13, 2015

/s/

T. S. Ellis, III
United States District Judge